MOFFAT, The FRANK. See Case No. 5,060.

---

## Case No. 9,689.

### MOFFIT et al. v. VARDEN.

### [5 Cranch, C. C. 658.] [1]

Circuit Court, District of Columbia. March Term, 1840.

EXECUTORS — LEGACY OVERPAID — REMEDY — DEVISES—CHILDREN—WHEN IN ESSE—LAPSED LEGACY—PER STIRPES — ABSENCE FOR OVER SEVEN YEARS.

1. If the executors, inadvertently, pay to some of the legatees more than their shares of the residuum, and to others of the legatees less than their shares, and the estate is not sufficient to make good the deficiency, the executors must suffer the loss, or look for reimbursement to the legatees who have been over-paid.

2. If property be devised to the children of A. B. to be divided among them, when they arrive at the age of maturity, the established rule of construction is, that all the children then living, (that is, when the eldest shall have arrived at the age of twenty-one,) shall come in for their share, whether born before or after the death of the testator.

3. The shares of those who have died in the mean time, will have lapsed into the general residuum, to be divided among the survivors: and the children born in the mean time, become entitled to their equal shares with the other children.

4. If one die after the eldest arrived at the age of twenty-one and before actual distribution, his share goes to his next of kin, and does not lapse into the residuum.

5. A person who has not been heard of for more than seven years, will be presumed to have died at the end of the seven years.

6. When the devise is directly to the children of the testator's brother and sister, the devisees take per capita, and not per stirpes.

Bill in equity by some of the legatees of Joseph Varden, against the executors and the other legatees. The bill was filed on the 30th

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

of November, 1836, and charges, 1. That Joseph Varden, after bequeathing $1,000 to Bishop Neale, in his will made on the 7th, and proved on the 9th of October, 1809, says, "Item, I leave all my other property, both real and personal, to be equally divided among the children of my brother, Richard Varden, and my sister, Henrietta Mickum, when they arrive at the age of maturity, that is, twenty-one years old; and I hereby appoint Mr. William Brent and Daniel Brent, of Washington city, executors of this my last will and testament, to see the same carried into effect." 2. That Richard Varden, at the death of the testator, had four children, namely, the complainant, Elizabeth Moffit, widow of Robert Moffit, and the complainant, Matilda Ann Moffit, wife of the complainant, John Moffit; John Varden who had been absent the last six years, and had not been heard from; and Joseph Varden, a minor, about nineteen years old (at the filing of the bill); and Richard Varden, "born after the death of the testator." That the testator's sister, Henrietta, at the time of his death had two sons, Samuel Mickum, and William Mickum. 3. That the executors took possession of the whole estate, real and personal, rents, issues, and profits, and have from time to time paid various sums of money for the support and maintenance and education of the devisees, but the fair proportion to which the complainants are entitled has not been paid to them. 4. That the complainants, and several of the other devisees, are of full age, and entitled to demand and receive their respective shares. 5. They pray for an account, &c., and that the real estate may be sold by a trustee, &c. Richard Varden, the infant, answers by guardian that he has been informed and believes, that he was born about three weeks after the death of the testator, and insists upon his right to a share of his uncle's estate under the will. Joseph Varden, on the 4th of December, 1828, being of full age, answered, and consented to the sale of the real estate, and admits the facts stated in the bill, and that his brother Richard is entitled to an equal share of the estate. He states that his brother John went to sea, more than eight years ago, and has not since been heard of. Samuel Mickum answers for himself, and as trustee of Wm. P. Mickum, and admits the facts stated in the bill, in relation to the families of Richard Varden and Henrietta Mickum. He states that he has received less than his share, but is opposed to the sale of the real estate, at this time, (1829,) because it would not then sell for its value. He denies the right of Richard Varden, to any share of the estate, not being in esse at the death of the testator, but born perhaps five or six months afterwards. He states that John Varden left Alexandria, as a sailor, on a foreign voyage, in November, 1819, and has never since been heard of except in the early part of 1820, by the master of the vessel in which he sailed, who reported

that John had left him in the port to which they were bound. That if John died under age, this defendant claims a proportion of the share which would have fallen to him. That as trustee for Wm. P. Mickum under the insolvent law, he claims his share of the estate. The executors, (June 7, 1828,) answer, and admit the facts concerning the family of Varden stated in the bill, and that they took possession of the real and personal estate, as executors and trustees under the will, from which they have realized a considerable sum of money, all of which, and more, they have expended in the support and education of the devisees, in keeping the houses in repair, and in the payment of debts, and the legacy of $1,000 to the bishop; and they refer to their accounts settled in the orphans' court, and exhibit an abstract of payments made by them for the benefit of the devisees, (Exhibit A) amounting to more than $8,000. They say they have no objection to the sale of the real estate, and pray to be reimbursed out of the proceeds thereof, whatever may be found due to them for their advances. On the 16th of January, 1830, the usual notice to absent defendants having been published, as to John Varden, the bill was taken for confessed against him, and the papers in the cause were referred to the auditor, to audit and state the account of the executors, and report the sums paid by them to the devisees respectively. On the 8th of January, 1833, the auditor reported a balance due to the executors of $637.52. That the whole amount advanced by them to the devisees was $8,044.90; the equal proportion of which to each of the seven devisees, including John and Richard Varden, is $1,149.27¼. That the following devisees have received more than their respective proportions, the sums annexed to their names, namely: Joseph Varden, $158.47½; Richard Varden, $301.10½; William P. Mickum, $463.54½,—$923.12½. And that the following have received less than their respective proportions, namely: John Varden, $318.41; Elizabeth Moffit, $453.71¾; Matilda Moffit, $92.64¾; Samuel Mickum, $58.34½,—$923.12. The auditor suggests, in his report, that the sum of $923.12, which has been overpaid to some of the devisees, and the sum of $637.52, advanced by the executors, should be paid out of the sales of the land. The auditor states the objection, made by Samuel Mickum, to the claim of Richard Varden to a share of the estate, and suggests that John Varden may now be considered as dead, and that his share should go to his brothers and sisters, as his next of kin; and should not, as a lapsed legacy, fall into the residuum devised to all the children of the testator's brother and sister. On the 28th of March, 1833, the cause was set for hearing, by consent, upon the bill, answers, exhibits, replication, auditor's report, and other proceedings, and the same having been heard, the court, on the 29th of March, 1833, decreed a sale of the real estate mentioned in the bill.

On the 27th of January, 1837, the trustee reported the sales made in 1833 and 1836, amounting to $721.

CRANCH, Chief Judge. The cause is now submitted for final decree. No exception is taken to the balance of $637.52, reported by the auditor, as due to the executors for advances made by them to the devisees; nor to the principle assumed by the auditor, that those who have received less than their share of those advances should be compensated out of the proceeds of the sales of the land; and that the balance due to the executors should be reimbursed out of the same proceeds, if they should be sufficient to pay both; that is, to put those, who have received less than their share of the advances, upon a par with those who have received more than their share, and also to pay the balance due to the executors. It appears by the report that it will require $923.12, to put all the devisees upon a par as to the advances made by the executors, which, added to the balance of $637.52, due to the executors, makes the sum of $1,560.64, to be raised by sales of the land, to do justice to all parties. But the sales produced only $721; and the question is, how is that money to be applied. Shall the executors receive it and apply it to the settlement of the balance due to them, and leave the deficient devisees to get their money from those who have received more than their shares; or shall those deficient receive it and compel the executors to resort to the devisees who have been overpaid? If those deficient devisees should sue the executors for the balance of their legacies, or proportion of the sales of the real estate, would it be a good defence for the executors to say that they had overpaid the other devisees? If the deficient devisees should bring a suit against the other devisees to compel them to refund the surplus which they have received, could they recover? Have not the executors made these advances and over-payments in their own wrong? And should they not have taken security to refund? I am inclined to think that the proceeds of the sales of the land should be applied to the equalization of the devisees; and that the executors must look to those devisees who have been overpaid to get back their money. Then, if the proceeds of the sales of the lands are to be divided among the devisees, it becomes necessary to ascertain who they are; and this presents the question, whether Richard Varden, who was born after the death of the testator, was entitled to an equal share with the other children. I am of opinion that he was. He was in ventre sa mere, at the death of the testator; and if the devise had been to all the children living at the testator's death, he would have been a legal devisee. See Clarke v. Blake, 2 Ves. Jr. 673; 3 Brown, Ch. 320, 2 H. Bl. 379; and the cases collected in 8 Com. Dig. Append. 425, 426, 1 Am. Ed. by Day, § 5. But by this will the property is to be equally divided among

the children "when they arrive at the age of maturity." In such case the legacies do not vest in possession until the eldest of the children arrives at the age of maturity; that is, twenty-one years of age; and in such cases the established rule of construction is, that all the children then living, (that is, when the eldest shall have arrived at the age of maturity,) shall come in for their share, whether born before or after the death of the testator. See Barrington v. Tristram, 6 Ves. 345, and the cases in 8 Com. Dig. 425, 426; Titcomb v. Butler, 3 Sim. 417; and Balm v. Balm, Id. 492.

The reason of this rule is, that when one of the legatees becomes entitled to receive his share, it is necessary to ascertain the whole number of legatees among whom the estate is to be divided. The shares of those who have died in the mean time, will, I apprehend, have lapsed into the general residuum, to be divided among the survivors; and the children born in the mean time become entitled to their equal shares with the other children. The time when the eldest of the children arrived at the age of maturity is not ascertained in these proceedings, nor the precise time of the birth of Richard Varden. He states, in his answer, that he has been informed and believes that he was born about three weeks after the death of the testator, who died on the day of the date of the will, or on the next day; for the will was made on the 7th and was proved on the 10th of October, 1809; so that unless one of the legatees came of age within three weeks after the death of the testator, Richard was entitled to his share. The time of the death of John is not ascertained. If he died before the eldest of the children came of age, his share lapsed into the residuum. If he died after, his share vested in him, and goes to his next of kin, in equal degree. He went to sea in 1819, and had not been heard of since the beginning of the year 1820. In analogy to the statute of bigamy, the presumption of death arises if seven years have elapsed since the party has been heard of; so that it may be presumed that he died in the beginning of the year 1827. The bill in this case was filed November 30, 1826, and states that the complainants, and several of the other legatees, were then of full age; so that there is a strong presumption that John's legacy vested before his death; and that it should go to his next of kin, namely, his brothers and sisters. The devise in this case, being directly to the children of the testator's brother and sister, the devisees take per capita, and not per stirpes; and each is entitled to an equal share.

MORSELL, Circuit Judge, concurred in the result of this opinion, but thought the legacies vested in possession in the legatees at the death of the testator, and not when the eldest child came of age. THRUSTON, Circuit Judge, absent.