JOHN L. PEABODY

*vs.*

THE FRATERNAL ACCIDENT ASSOCIATION OF AMERICA.

Androscoggin.    Opinion April 6, 1896.

*Insurance.   Notice.   Waiver.*

It is a well-settled principle of law, that when an insurance company accepts or assists in preparing second proofs of loss, it thereby waives any defects in the first proofs.

The plaintiff, holding an accident policy in the defendant company, met with an accident, October 19, 1893, which caused him considerable injury.   He sent the company a written notification on November 2, but it was not received until after the ten days required by the policy.   He contended, however, that the unseasonableness of the notice was afterwards waived by the acts of the company.

The acts thus relied on are of the following character.   A preliminary proof was sent to the company by the plaintiff upon a form furnished by it containing conditions and reservations; no objection being taken to this the company forwarded a second form, which was apparently a final proof and with no conditions or reservations.   On March 27, 1894, an officer of the company, with a medical expert employed by him, called on the plaintiff at his home where he submitted himself to a personal examination.   At the close of this interview this officer demanded of the plaintiff the surrender of the second blank form as the result of what was claimed to be misrepresentation of material facts, and for other reasons; and in a few days afterwards the company rejected the claim.   On May 7, 1894, the company received the second form properly filled out by the plaintiff who demanded the compensation claimed by him for his injuries.

The case was submitted on a report, which admitting that the plaintiff received an injury, stipulates that the only question submitted for decision is whether the notice is sufficient; or, if not sufficient, whether its insufficiency was waived by the company or not.

*Held;* that all these acts taken together, in effect, constitute a waiver by the company of a merely technical forfeiture created by its receiving the notice of the injury a few days later than was stipulated in the contract.

ON REPORT.

The case appears in the opinion.

*N. & J. A. Morrill,* for plaintiff.

*Geo. C. Wing,* for defendant.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WIS-WELL, STROUT, JJ.

PETERS, C. J.    The plaintiff, holding an accident policy in the defendant company, on October 19, 1893, met with an accident which caused him considerable injury.    A provision of the policy requires that the company shall receive written notice of the accident within ten days after its occurrence.    On November 2, 1893, the plaintiff sent a written notification which was not received by the defendants until after the ten days had expired, being a few days too late.    The plaintiff contends, however, that the unseasonableness of the notice was afterwards waived by the acts of the company, and a contention over this point is the only question here.

Upon the receipt of plaintiff's letter to them, the company sent to him a printed blank (called form number 1) containing a long schedule of inquiries to be answered as a first proof of loss, and to be returned within a short time to the company.    The blank contained the following notice:    "This blank is not intended for final proofs and where the disability is likely to continue for a considerable time a blank (No. 2) will be mailed claimant (on receipt of this blank properly filled up) to enable him to make final proofs; unless settlement shall be made on receipt of this blank."

And the following note was also added to the blank:    "Having received notice of your intention to claim benefits under your policy for injuries just received, we herewith send you this blank form, requesting that you fill up the same *at once* (also obtain statement of attending physician) and return same to this office *within seven days from this date at the latest.*    The furnishing of this form shall not be held to be a waiver of any of the conditions of the policy as to notification or as an admission of any claim. No claim can be entertained without the certificate of a duly qualified and registered medical practitioner."

There was also attached to the blank form this memorandum for the plaintiff to sign:    "I do hereby warrant the truth of the foregoing particulars in every respect, and that I have not abstained

from my usual occupation, either wholly or partially, longer than necessary, and I agree that if I have made, or in any further declaration do make, any false or untrue statement, suppression or concealment, my right to benefits under my policy shall be abso-lutely forfeited and the policy be void."

The plaintiff filled out the form, answering all inquiries fully, and, obtaining also a certificate from his attending physician, seasonably sent the papers thus completed to the company. There-upon the company, on some day in November, 1893, without any objection or condition whatever forwarded to the plaintiff another blank form, called form 5, to be filled out by him as a further and apparently a final proof of loss. This form is without condition or reservation.

No other communication took place between the parties after this until March 27, 1894, when a person, who was at the time secretary and treasurer of the company, together with a medical expert employed by him, called on the plaintiff at his home in Lewiston and by his permission subjected him to a personal exam-ination. At the termination of the interview the secretary in a letter to him demanded of the plaintiff a surrender of the blank known as form five, which the company had furnished him, "as a result of what we claim to be a misrepresentation of material facts, and for other reasons." The company also wrote, March 29, 1894, the plaintiff that it had decided to reject any claim he might make upon it for injuries received by him. On May 7, 1894, the form number 5 was received by the company filled out and signed and sworn to by the plaintiff who demanded the compensation claimed by him for his injuries. Alongside these facts it should be noticed that in the report of the case it is admitted that the plaintiff received an injury, and it is stipulated by the parties that the only question shall be whether the notice was sufficient, or, if not sufficient, whether its insufficiency was waived by the company or not; a default to be entered if the plaintiff prevails on this point.

Did all these acts taken together in effect constitute a waiver by the company of a merely technical forfeiture created by its receiv-

ing the notice of injury a few days later than was stipulated in the contract? We think that by deciding this question affirmatively we shall reach a just and equitable conclusion. The requirement of forwarding a notice so that it shall be received within ten days after the accident, is of itself so stringent and unreasonable that a legislative act has been passed, since the date of this policy, allowing notice in all such cases to be given within sixty days instead of ten. Laws of 1893, ch. 223.

The act of the company in sending the blank form number one to the plaintiff was strong evidence of waiver. It amounted to at least a conditional waiver, the implied condition being that no fraud was, in the opinion of the company perhaps, being practiced upon it. It would have been an inexcusable imposition to invite the plaintiff to make up proofs of loss when the intention of the company was to wholly disregard the same whatever might be the result of their investigation. And still the company has abandoned any defense on the merits of the claim. Their secretary in his letter intimates some wrong on the part of the claimant but no particular act of fraud or wrong ever has been specified.

But we need not rely on this first act of the company as conclusive evidence of waiver. The sending of the second blank (form No. 5) unconditionally, and the fact of the bodily examination made by the agents of the company and submitted to by the plaintiff, taken in connection with the confession that the company finally abandons its charges of fraud as a defense to the action, relying only upon the want of a strict compliance with the contract in the matter of notice, all these facts, aided by the other conduct of the company as before considered, certainly establish a waiver of any technical forfeiture that might have been created by the lateness of the notice. There are many cases which recognize the principle that when an insurance company accepts or assists in preparing second proofs of loss it thereby waives any defects in the first proofs. And that is as logical a conclusion as is the same principle when applied in the matter of pleading, an instance which the books give in illustration of the doctrine of waiver generally. If a defendant pleads the general issue, or any plea in bar

of the action, he cannot afterwards plead in abatement. Every one must take advantage of his rights at the proper time. *Trippe* v. *Prov. Fund Society*, 140 N. Y. 23; *Mer. Ins. Co.* v. *Gibbs*, 56 New Jer. (Law) 679. Our own cases are more or less strongly of the same effect.

*Defendant defaulted.*