FIDELITY & CASUALTY CO., VS BROWN.

Opinion delivered September 25, 1902.

1. *Appeal—Affidavits in Record but not in Bill of Exceptions Stricken Out.*

   In the trial below, affidavits were filed by plaintiff in response to a motion requiring her to give cost bond. These affidavits were embodied in record proper and not in Bill of Exceptions. A motion to strike them from the record must be sustained and the action of the court in overruling motion for cost bond considered without reference to such affidavits.

2. *Motion for Cost Bond—Verification—Proof Required—Dismissal of Action—Waiver.*

   In an action wherein the complaint alleged the plaintiff to be a resident of Indian Territory, a motion was filed for a cost bond stating that since the commencement of the suit plaintiff is residing in Texas, and is not a resident of Indian Territory. This was sworn to by one of the attorneys for defendant. *Held,* that such motion states only a conclusion, and this, though verified by affidavit, is not

the proof the law requires, and the burden on the defendant is not overcome in view of the statement in plaintiff's complaint. *Held*, also, that by failure to move to dismis the action for want of cost bond, the requirement of the statute as to cost bond was waived.

3. *Demurrer—Refusal to Consider and Decide—Equivalent to Overruling*

The effect of the refusal of the court to hear and decide the defendant's demurrer is the same as if it was heard and overruled and no error is committed, if the demurrer should not have been sustained.

4. *Accident Insurance—Death—Notice and Proof.*

In an action to recover upon an insurance policy covering indemnity for accident and death, containing in its provisions a requirement that immediate written notice must be given of accidents for which a claim is to be made and also that proof of death must be furnished within two months from time of death, the complaint alleged that death resulted in ninety days after the accident and proofs of death were made to defendant company immediately after the death. *Held*, that the complaint was good as against demurrer.

5. *Accident Insurance—Notice—Waiver of.*

Notice of an accident to an insured was not given to the company until after death resulting from such accident, when proofs of death were furnished and claim made for payment. But the company had knowledge of the accident and made medical examination through their local physician, and his statement was used at the trial. An amended answer of defendant company contained no allegation of want of notice. *Held*, that if such notice were requisite, objection made, after withdrawing the pleadings for that purpose came too late and the action of defendant upon the knowledge it had and failure to refuse to pay for want of notice was a waiver of such notice.

6. *Accident Insurance—Cause of Death—Instructions.*

In an action to recover upon an insurance policy which contained provisions that the company would only be liable if death resulted in ninety days from the accident or injuries received independently of all other causes, and that same did not cover injuries fatal or otherwise resulting from any disease or bodily infirmity, the defense was that the death resulted from other causes than the accident

alleged. Instructions reciting these provisions of the policy and requiring the jury to satisfy themselves before finding for plaintiff that the defendant was liable under the terms of the policy and that the burden of proof was upon the plaintiff, *Held* to fairly present the issues to the jury.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by Mrs. E. C. Brown against the Fidelity & Casualty Company. Judgment for plaintiff. Defendant appeals. Affirmed.

The appellee, Mrs. E. C. Brown, filed her complaint against the Fidelity & Casualty Company, of New York, in the United States court at Ardmore, alleging that on the 25th day of November, 1896, the defendant, in consideration of the sum of $20 paid by John L. Brown, husband of the plaintiff, delivered to the said John L. Brown a policy of insurance (No. 384,564) for the sum of $2,000, whereby it insured the said John L. Brown, for the period of 12 months, beginning on the said 25th day of November, 1896, in the said sum of $2,000, against bodily injuries sustained through external, violent, and accidental, means, as follows: That is to say, if death should result within 90 days from such injuries, independently of all other causes, said company agreed and bound iteslf to pay to the plaintiff the sum of $2,000. · Plaintiff further alleged two renewals,— one on the 18th day of November, 1897, for one year from the 25th day of November, 1897, and renewal therefrom from the 25th day of November, 1898, for one year. A copy of the policy was attached to the complaint, as also were the renewal receipts, and made exhibits. Plaintiff further alleged that on "about the 15th day of April, 1899, in the town of Davis, in the Southern

District of the Indian Territory, the said John L. Brown, while engaged in his regular occupation of brick and stone contractor and mason, was accidentally and violently injured under the circumstances following: By the falling of a stone of great weight the distance of about two feet, which said stone was then and there being used by the said John L. Brown in his business as aforesaid on the foundation of a certain stone building situated in the said town of Davis, and which said stone came in violent conflict with the left leg of the said John L. Brown, and seriously wounding, bruising, and injuring the said John L. Brown, and from which said wounds, bruises, and injuries, and from no other cause, there developed a certain dangerous and deadly disease, viz., septic poison, from which, and as a direct result of which, said John L. Brown died on the 22nd day of May, 1899, within ninety days from the date he was accidentally injured, as aforesaid. And immediately thereafter the plaintiff herein made proofs of death of the said John L. Brown, and the cause thereof, to the defendant, at its home office, in the city of New York, in the State of New York, in accordance with the terms and conditions of said insurance policy as aforesaid." Then followed the allegation that the defendant had failed to pay the said $2,000, though often requested so to do. It was alleged in said complaint that the plaintiff was a resident of the Indian Territory. On the 29th day of January, 1901, the defendant filed its motion to require the plaintiff to give bonds for costs in the action; said motion being supported by the affidavit of S. T. Bledsoe, one of the defendant's attorneys, alleging that the plaintiff had, since the institution of the suit, removed from the Indian Territory, and then resided in the State of Texas, and was not a resident of the Indian Territory. The hearing of said motion was passed until the 6th day of February, 1901, and, when the same came to be heard, it was overruled by the court. Thereafter, on the 11th day of February, 1901, the plaintiff filed with the clerk the affidavits of Mrs. E. C. Brown, Zack Thompson,

S. P. Stanford, Ed Nelson, Jerry McCluskey, O. L. Gibson, and L. C. Parker touching her own declarations about her residence. These affidavits were not incorporated in the bill of exceptions. The defendant has filed a motion in this court to strike from the record the above affidavits. Thereafter the defendant, by permission of the court, withdrew its original and amended answers, and filed its demurrer to the plaintiff's complaint, but the court refused to consider the same or pass upon it. On the 11th day of February, 1901, the defendant filed its amended answer in this cause, wherein it admitted that plaintiff was a citizen of the United States, but denied that she was a resident of the Southern District of the Indian Territory, and admitted that defendant was a corporation duly and legally incorporated under and by virtue of the laws of the State of New York. The defendant admitted the issuance of the policy on the 25th day of November, 1896, the payment of the premiums, and the issuing of the renewal certificates, but denied that said policy was ever in full force or binding upon the defendant for the reason that the warranties and representations made and contained in the application upon which said policy was issued and renewed from year to year were false, and, being false and fraudulent, invalidated said policy, and the same was therefore never in full force and effect. And all of the other allegations of the complaint were denied. And further answering, defendant alleged that death did not result from the said injury independently of all other causes, but that the same was due to an injury received prior to said date, and to the physical condition of the said John L. Brown, and to the existing diseased condition of the left leg of the said John L. Brown, and of the diseased condition of the blood of the said Brown, and of the diseased condition of the bone of the leg of the said Brown, and to other existing diseases and bodily infirmities, all of which contributed directly and indirectly, and in part, if not wholly, to the death of the said John L. Brown. Defendant further denied that plaintiff made

(27)

proper proof of the death of the said John L. Brown, in accordance with the conditions of the policy. The cause was then tried, resulting in a judgment in favor of the plaintiff for the amount sued for. A motion for a new trial was filed and overruled, and the cause regularly appealed to this court.

*Ledbetter & Bledsoe,* for appellant.

*H. W. Fielding, Henry M. Furman,* and *C. L. Herbert,* for appellee.

CLAYTON, J. The first assignment of error, as set out in appellant's brief, is: "The court erred in overruling the motion of the defendant to require the plaintiff to give a bond for costs, as required by law.' The motion filed in the court below is as follows: "Comes now the defendant, the Fidelity & Casualty Company, and moves the court to require the plaintiff to give a cost bond for all costs, because since the previous trial of this cause the plaintiff has removed to, and is now residing in, the city of Ft. Worth, in the State of Texas, and does not reside in the Indian Territory." This motion was sworn to by Mr. Bledsoe, one of the attorneys for the defendant. The motion, without further proof, was overruled by the court, and exception saved. Five days thereafter, it seems, the plaintiff filed a number of affidavits in response to the motion. These affidavits are not embraced in the bill of exceptions, but are embodied in the record proper. There is a motion pending here to strike them from the record because they are not contained in the bill of exceptions. This motion must be sustained, because they could only be made a part of the record through the instrumentality of a bill of exceptions, and therefore the action of the court below in overruling the motion for a cost bond must be decided without any reference to the plaintiff's affidavits.

The statement of the motion that plaintiff had become a non-resident after the commencement of the suit is an admission that she was a resident at the time the suit was instituted. The complaint alleged it, and the burden of proof, therefore, to show that she had afterward become a non-resident, was upon the defendant. The only evidence offered by defendant to overcome the prima facie case of the plaintiff was an ex parte affidavit of one of its counsel made in support of the motion. The court evidently considered this single supporting affidavit not sufficient to overcome plaintiff's prima facie case, and, if we were allowed to consider the affidavits made in response to the motion, we could easily determine that the court's judgment was correct. Upon an examination of the affidavit in question (that of defendant's counsel, )it will be seen that the affiant testifies to nothing but a conclusion. The motion alleges "that plaintiff has removed, to and is now residing in, the State of Texas," and that is the fact sought to be proven; and this witness testifies only that the facts stated are true. How he knows it, the facts upon which he bases his conclusion, whether or not he has seen her in the State of Texas, and, if so, under what circumstances, are not stated. The court cannot know from such a statement whether or not the affiant knew it from his own observation or from hearsay; nor can it discover whether or not the facts from which the affiant draws his conclusion that plaintiff was a resident of Texas, would be sufficient, in the mind of the court or in law to make her so. The affidavit is but a verification of the motion. The law requires proof, and the mere sworn statement that the conclusion sought to be established is true is not the proof which the law requires. As the case stood, there was presented to the court by a verified motion, a question for its decision, with the burden of proof on the party making the motion, without any sufficient or legal proof to support it. Besides, no motion was filed by the defendant, either before or after the overruling of the motion for cost bond, to

·dismiss the case because of the want of such bond. The statute provides that "an action in which a bond for costs is required by the last section, and has not been given, shall be dismissed on the motion of the defendant at any time before judgment, unless in a reasonable time to be allowed by the court after the motion is made therefor such bond is filed, securing all past and future costs; and the action shall not be dismissed or abated if a bond for costs is given in such time as the court may allow." The failure of the defendant to move to dismiss for the reasons set out in his motion must be taken as a waiver of the requirement of the statute, for the statute only authorizes the court to dismiss for such cause on motion of the defendant. The court did not err in overruling the motion.

The second specification of error is: "The court erred in refusing to consider the demurrer of the defendant to the plaintiff's complaint, after permitting the defendant to withdraw all of its pleadings and file said demurrer." We think that the effect of the refusal of the court to hear and decide the defendant's demurrer is the same as if it had heard and overruled it, and, therefore, if the demurrer should have been sustained upon a hearing, the court was in error; otherwise no error has been committed of which the defendant can complain.

The demurrer is as follows:

"Comes now the defendant, and demurs to plaintiff's complaint, and says the same is insufficient and constitutes no cause of action against the defendant. For special demurrer, defendant says that plaintiffs do not allege that they gave the notice referred to in paragraph 11 of complaint of plaintiff, and, in the absence thereof, this claim would be forfeited, and she would not be entitled to recover."

The paragraph of the complaint demurred to is as follows: "The said John L. Brown died on the 23d day of May, 1899, within ninety days from the date he was accidentally injured;

and immediately thereafter the plaintiff herein made proofs of the death of the said John L. Brown, and the cause thereof, to the defendant, at its home office, in the city of New York, in the State of New York, in accordance with the terms and conditions of said insurance policy as aforesaid."

The eleventh condition of the insurance policy is as follows:

"(11) Immediate written notice must be given the company, at New York City, of any accident and injury for which a claim is to be made, with full particulars thereof, and full name and address of the assured. Affirmative proof of death, or loss of limb, or of sight, or of duration of disability, must also be furnished to the company, within two months from time of death, or loss of limb or of sight, or of the termination of disability. Legal proceedings for recovery hereunder may not be brought till after three months from date of filing proofs at the company's home office, nor brought at all unless begun within six months from the time of death, loss of limb or sight, or the termination of disability. Claims not brought in accordance with the provisions of this clause will be forfeited to the company."

The complaint alleges no notice of the accident until immediately after the death of the insured; and the question here presented is, at the suit of the beneficiary, in case of the death of the insured, is immediate notice of the accident necessary, by the terms of the policy, or is "immediate proof of the death and the causes thereof" sufficient? It must be conceded that proof of the death and the causes thereof" includes notice of the death and the causes thereof. This question, arising out of the construction of a policy almost identical with the one before us, was passed upon by the United States circuit court of appeals for the Eighth Circuit in the case of Association vs Smith, 29 C. C. A. 223, 85 Fed. 401, 40 L. R. A. 653, in which the court says: "The Western Commercial Travelers' Association, the

plaintiff in error, has sued out a writ to reverse a judgmen
ag inst it upon a certificate of insurance against accident which
it issued to Freeman O. Smith, one of its members, for the benefit
of Sarah I. Smith, the defendant in error. A jury was waived,
the court tried the case and made a special finding of the facts,
and the error assigned is that the facts found do not support the
judgment, (1) because they show that immediate notice of the
accident or injury was not given to the association, as required
by the policy; and (2) because they fail to show that the death
of the member was produced by 'bodily injuries effected by
external, violent, and accidental means.' These are the facts
relative to the two questions thus raised which appear from the
pleadings and the findings: The certificate upon which the suit
is based secured to the member, Freeman O. Smith, indemnity
in various amounts for total disability, for the loss of an arm or
a leg or one arm and one leg, and for the loss of both arms or
both legs, by accident; and it also secured to his beneficiary, the
defendant in error, indemnity for his death, produced by bodily
injuries effected by external, violent and accidental means alone.
It contained this provision: 'In the event of any accident or
injury for which any claim shall be made under this certificate
or in case of death resulting therefrom, immediate notice shall
be given in writing, addressed to the secretary at St. Louis,
Missouri, stating the full name and address of the member, num-
ber of certificate, occupation, and name and address of attending
physician, with full particulars of the accident or injury, and
failure to give such notice shall invalidate all claim under the
certificate; and unless direct and affirmative proof of the death
or duration of total disability shall be furnished the association
within ninety days from the happening of such accident, as per
forms of proof furnished, and questions prepared on same by
the board of directors of the association, then all claims under
this certificate shall be waived and forfeited to the association.'
In the latter part of August, 1895, while the certificate was in

force, Freeman O. Smith, who was a strong and healthy man, commenced wearing a pair of new shoes. About September 6, 1895, the friction of one of the shoes against one of his feet, unexpectedly and without design on his part, produced an abrasion of the skin of one of his toes. He gave the abrasion reasonable attention, but it nevertheless caused blood poisoning about September 26, 1895, which resulted in his death on October 3, 1895. Neither the deceased nor the defendant in error gave any notice of this accident or injury to the association before his death, but within a reasonable time thereafter due notice thereof, and of her claim under the certificate, was given to the association by the defendant in error. The agreement of the parties was that the failure to give the notice required by this certificate should invalidate all claim under it, and there can be no question but that the service of this notice was a condition precedent to the enforcement of any such claim. Insurance Co. vs Kyle, 11 Mo. 278, 289, 49 Am. Dec. 74; McCullough vs Insurance Co., 113 Mo. 606, 21 S. W. 207; McFarland vs Association 124 Mo. 204, 27 S. W. 436. The real question here is therefore what was the notice exacted of the beneficiary by the contract, and when was it to be given? The agreement was that "in the event of any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given.' In the interpretaiton of this provision, the fact must be borne in mind that all claims under this contract for accidents and injuries which do not result in death accrue to the member himself. The beneficiary of the death loss has no interest in them. It is only in a case in which death results from an accident or injury that any claim in favor of the defendant in error arises. In the nature of things, she cannot know whether she will have a claim until the member whose life is insured for her benefit is dead. Must she give notice of the accident or injury on account of which her claim may arise before she knows whether or not it will ever come into

existence? A provision which exacts such a notice should be plain clear,, and unambiguous. Forfeitures are not favored in the law, and a strained and unnatural construction must not be given to this contract in order to impose one here. A stipulation could have easily been drawn which would have plainly imposed upon this beneficiary the duty of giving such a notice. If this contract had simply omitted the words, 'or in case of death resulting therefrom.' and had provided that, 'in the event of any accident or injury for which any claim shall be made under this certificate, notice of such accident or injury shall be given immediately after it happens,' there would have been no doubt that the beneficiary was required to notify the association of the accident as soon as it occurred. If it had only required that, 'in case of death resulting from any accident or injury for which any claim shall be made under this certificate, immediate notice shall be given,' it would have been equally certain that she was not required to give any notice until the death had supervened. As it stands, it seems to us to be intended to provide two different classes of notices for the two classes of actions,—one an immediate notice of the accident or injury which does not result in death; the other, an immediate notice of the death which results from such an accident or injury, to be given by the beneficiary as soon as it occurs. If this is not the correct construction of the provision, the words 'or in case of death resulting therefrom' are without significance or effect, because the stipulation, without these words, would require the beneficiary of a death loss to give notice of the accident or injury immediately after it occurred. * * * When the provision, 'in the event of any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given,' is read in the light of the events to which it refers, and of the relation of the parties to the contract to each other, its natural and obvious meaning is that, in the event of any accident or injury which shall not result in death, immediate notice

of such accident or injury shall be given, or, in the case of death resulting from any such accident or injury, immediate notice of such death shall be given, because in the one case it is the injury and in the other it is the death, which conditions the existence of the claim. The conclusion is that this certificate required no notice of the accident or injury to be given to the association by the beneficiary of the death loss before the death occurred, and the due notice which the court finds she gave immediately after the death was a sufficient compliance with this stipulation of the agreement." See, also, Cooper vs Association, 132 N. Y. 334, 30 N. E. 833, 16 L. R. A. 138, 28 Am. St. Rep. 581; McFarland vs Association (Mo.) 27 S. W. 437. Being within the appellate jurisdiction of the United States court of appeals for the Eighth Circuit, the decision of that court in the above cited case of Association vs Smith is conclusive upon us. And as the complaint in this case does allege immediate notice after the death of the assured, and the suit is brought by his widow, the allegation is sufficient as against a demurrer. And this substantially settles the tenth specification of error, which is: "The court erred in refusing to instruct the jury, at the request of the defendant, that, in order to entitle the plaintiff to recover in this action, immediate written notice must have been given to the company, at its office in New York City, of the accident or injury for which this claim is made; and, if you find that said notice was not given in accordance with paragraph 11 of said policy, then plaintiff's claim would be forfeited; and you will find for the defendant." The evidence in the case showed that the company, prior to the death of the assured, had, in some way, notice of the accident. It sent a telegram from its principle office, in New York, to Doctor Bogie, its local physician and surgeon, directing him to see and examine the assured, which was done; and a long written statement, signed by the assured, was procured from him by the doctor, relating to the accident, its causes and extent, and as to his previous physical

condition, a copy of which statement was sent to the home office, and the statement was afterwards introduced in evidence at the trial. An answer and an amended answer were filed. The original answer is omitted from the record. The only allusion made in the amended answer to the want of notice is as follows: "The defendant further denies that plaintiff made proper proof of the death of said John L. Brown in accordance with the conditions of said policy, and denies the sufficiency of the proof of said death." No mention is made of a want of notice of the accident. The company had had actual notice of that in some way, and had acted upon it to the full extent as if the notice were regular. After the filing of the amended answer, that and the original answer were withdrawn for the purpose of calling the attention of the court and the opposite party, for the first time, to the fact that the plaintiff had not given the company notice of this accident. If this were required,— and we hold that as to the plaintiff in this suit it was not,—it came too late. The action of the defendant upon the notice it had, without any intimation that it refused to pay because of the want of a notice of the accident, was a waiver of such notice. May, Ins. (3d Ed.) §§ 468, 469, and cases cited; Insurance Co. vs Pendleton, 112 U. S. 696, 5 Sup Ct. 314, 28 L. Ed. 866; Insurance Co. vs Baltimore Warehouse Co., 93 U. S. 527, 23 L. R. A. 868; Insurance Co. vs Gibson, 53 Ark. 501, 14 S. W. 672; Insurance Co. vs Brodie, 52 Ark. 11, 11 S. W. 1016, 4 L. R. A. 458; McBride vs Insurance Co,. 30 Wis. 562; Peabody vs Association, 89 Me. 96, 35 Atl. 1020; Bowne vs Insurance Co., 46 Mo. App. 474; Coffman vs Insurance Co., 57 Mo. App. 647; Martin vs Association, 61 Hun. 467, 16 N. Y. Supp. 279. For further citation of authorities upon this point see 3 Berrym. Dig. Ins. 983, pt. 8, § 8914 et seq. We therefore hold that the court did not err in refusing to instruct the jury as requested.

All of the other specifications of error go to the action of the court in giving and refusing to give certain instructions to the

jury. They attack the court's charge in not being sufficiently certain and explicit in presenting to the consideration of the jury the main issue in the case, which was that the death of the assured resulted from the injuries alleged in the complaint, independently of all other causes. With the exception of the question of notice, the whole of the evidence introduced by the defendant was for the purpose of showing that the assured, arising from other causes than that alleged, had a running sore on his left leg at the time when and at the place where he was injured by the falling of the rock mentioned in the complaint and that this sore, if not the sole cause, superinduced the conditions which resulted in the death of the assured, and that therefore his death was not the result of the alleged injury, independently of all other causes. The court, in its general charge, said to the jury: "Then this (the policy) has two or three renewals, which, I believe, makes it cover the time of his death; and they insure against bodily injuries sustained by external, violent, and accidental means, as follows: 'If death shall result within ninety days from such injuries, independently of all other causes, the company will pay the principle sum of this policy to Mrs. E. C. Brown, his wife, if surviving, etc. Then it has another provision that probably affects the question under consideration here: 'This insurance does not cover disappearances, nor war risks, nor voluntary exposure to unnecessary danger, nor injuries, fatal or otherwise received while or in consequence of having been under the influence of, or affected by, or resulting directiy or indirectiy from intoxicants, anæsthetics, narcotics, sunstrokes, freezing, vertigo, sleepwalking, fits, hernia, or any disease or bodily infirmity.'" The court further instructed the jury that "the burden of proof is upon the plaintiff to establish, by a fair preponderance of testimony, all the allegations of her complaint that are not admitted by the answer of the defendant." The court told the jury that they were the sole judges of the weight of the evidence and the credibility of the witnesses; that if they were satisfied from

the testimony, by a fair preponderance thereof, that the defendant was liable under the terms of the policy, they should find for the plaintiff, otherwise for the defendant. We think the charge fairly presented the issues to the jury.

Affirmed.