GRUNTER, J.
This was an action npon a policy of accident insurance by the guardian of infant beneficiaries resulting- in verdict and judgment for plaintiff. Defendant appeals. 135 errors are assigned. . All of 'Which wé-have- considered, ■ but discuss only those *397 .which counsel apparently consider .most important, and which we regard so.
The complaint alleges that insured in discharging his duties as porter upon a sleeping car was accidently struck upon the head by the falling of a berth, and from the injuries so sustained died.
These allegations the answer denies. •
1. Defendant contends that there is no evidence of the principal fact, that deceased was injured, except. his statements made to witnesses Carter and Stafford after the- alleged injury, and that such statements were inadmissible, being,, as it contends, hearsay. The rule under which the admissibility of such testimony is determined is that if the principal fact — an injured ■ condition — is shown by other evidence the cause of the condition .can be shown by the statements of the deceased injured party, provided such statements constitute a part of the res gestae.
Insurance Company v. Mosley, 8 Wallace 397, was upon an accident policy. Plaintiff insisted that the insured died in consequence of an accidental fall. Defendant that, his death • was caused by disease. Mrs. Mosley, plaintiff and surviving wife, testified that insured got. up. between twelve and- one o ’clock at night and went out; she did not know how long he was gone; when he came back he said he had fallen down the backstairs and almost killed himself; his voice trembled; he complained of his head; appeared faint and vomited; she was up with him all night, he complained and appeared to be in great pain..
The son testified that he slept in the lower part of the building occupied by the father, at about twelve o’clock of the night mentioned he -saw his father lying with his head on the counter and asked what was the matter. He, replied That he had fallen down the back stairs and had hurt himself very-badly.
These statements, as .to the cause .of the injury *398 were objected to. No one heard or saw insured fall; there were no cuts or bruises upon the body. These statements were the only evidence of the cause of the injury. The reception of the evidence below was sustained on appeal, the court saying:
“Here the principal fact is the bodily injury. The res gestae are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress. Where sickness or affection is the subject of inquiry, the sickness or affection is the principal fact. The res gestae are the declarations tending to show the reality of its existence, and its extent and character. The tendency of recent adjudications is to extend rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of'evidence more safe in its results. There is none which rests on a more solid basis of reason and authority. We think it was properly applied in the court below.
“In the ordinary concerns of life, no one would doubt the truth of these declarations, or hesitate to regard them, uncontradicted, as conclusive. ’ ’
The doctrine announced in this case has not been repudiated by the eminent tribunal which declared it, and it has been frequently approved. Among the cases see: Northern American Accident Asso. v. Woodson, 64 Fed. 689; Ry. Co. v. Ashley, 67 Fed. 209; Ry Co. v. Anderson, 82 Tex. 516; Leahy v. Ry. Co., 97 Mo. 167; Lindenburg v. Crescent Mills (Utah), 33 Pac. 692.
The principal fact here was the injured condition of the insured. There was evidence of this other than his declarations made to the witnesses Carter and Stafford. He was a sound, healthy man, discharging his duties as porter. The train entering *399 the' town of Davisvillé' made a sudden, violent and unusual stop, the jar resulting to passengers from the stop being' so violent as to alarm them. Immediately thereafter insured was seen standing at á berth partially made down, his foot upon the stepping stool, his head between his hands ánd in great pain. He continued in great pain, his face and complaints showing pain. His head was tied up with a wet towel, and in his suffering he was put to bed in the smoking room. This was the night of October 26. He remained in bed in the car sick and suffering until he arrived at home (Denver) October 29. He there went to bed, called a physician, and remained under his care until death, November 11. An autopsy was then made showing a congested condition of the brain on the right side, and that from this he died. He was found to have been a strong, healthy man; every organ even in death was healthy and in good condition. There was no symptom of any disease from which the congested condition of the brain could arise. Dr. McNaught, who attended the insured continuously after his arrival in Denver, and who participated in the autopsy, testified that the probable cause of the congested condition of the brain was an injury. These facts showed that insured was suddenly changed from the state of health to one of sickness and pain; they showed the principal fact, the injured condition of the insured. The evidence showing the injured condition was as strong as that showing the injured condition in the Mosley case. In neither case did any party see the accident. In neither case were there bruises or cuts upon the body. In each case the injured condition was proven by the suffering, the actions of the party, and the results of the condition.
The injured condition having been shown, any statements made by the insured explanatory of the *400 cause, which were a part of the res gestae, were admissible for that purpose.
In this case the witness Carter found insured injured and in pain, and inquired of him “What is the matter with.you Dave ? In a very faint voice he said, ‘I was getting down this berth and it came down and struck me in the head, # * * . ’ I think he said his foot slipped, or something like that, he said something about the berth coming down and his foot slipping, I think he said, and before he. could recover himself the berth caught him and struck him. ’ ’ This statement, introduced for the purpose of showing the cause of the injury, appellant contends should have been rejected as hearsay.
The statement was made by deceased at the scene of the accident, immediately thereafter, unaffected by any disturbing cause intervening between the accident and the statement. Apparently it was unmeditated, and the natural spontaneous expression of the deceased, issuing-directlyfrom-y and- produced solely by the accident, and its results. No reason appears for rejecting it as a statement concocted by deceased in his own behalf; apparently it was a natural, unbiased truthful statement given in explanation of his then injured condition and pain.
The law applicable to this class of testimony is stated in Pueblo Building Co. v. Klein, 5 Colo. App. 348, 354, 38 Pac. 608. (Approved, Herring v. The People, 28 Colo. 23, 28.)
“The declaration offered in evidence must be either contemporaneous with the principal fact, or its natural and spontaneous outgrowth. It must be instinctive, unmeditated utterance of the party while the impression produced by the event has full possession of the mind. The connection between the statement and the fact must be such that the one is the evident interpreter of the other. Their relation *401 to each other must be that of immediate cause and effect. When the two are thus connected, it does not matter that there is an appreciable lapse of time between them. Notwithstanding such lapse, the one is a continuation of the other, and both are parts of one transaction. But if there is a severance of the connection, if the transaction, so far as the person speaking is concerned, is at an end before the declaration is made, the two are distinct, independent of each other, and it is immaterial how minute the interval which separates them. The utterance then proceeds from volition, and the speaker is not the mouthpiece of the event. — See 1 Wharton on Ev., § 259; 1 Green-leaf on Ev., §§ 108, 110,”
It would serve no useful purpose to attempt a review of the many authorities discussing this principle of evidence and applying it to the varying facts presented by the cases. We are clear that this evidence was properly admitted. Upon the same principle the statements made to deponent Stafford were properly received.
2. The policy provided: “This insurance does not cover * * * any injury fatal or otherwise of which there is no visible mark upon the body. ’ ’ Appellant contends that there was no evidence of a visible mark of the alleged injury upon the body of deceased. The jury in effect found that deceased was accidentally struck upon the head by the falling of an upper berth of a sleeping car, and that the injury so produced was the cause of his death. It was the purpose of defendant in issuing this policy, and the purpose of deceased in taking it out, to have the policy cover accidents of the character of the one here involved. The purpose of the provision of the policy thus cited was not to exclude accidents of the character before us, but to prevent the defendant from being imposed upon by fictitious accidents *402 claimed to be within the policy. ' If the accident was intended by the parties to be within the policy such a strained construction should not be put upon it as to exclude the accident and .defeat the intention of the parties. The policy of the courts is to give a liberal construction to such provisions in favor of-the insured. — Travelers Ins. Co. v. Murray, 16 Colo. 296, 305; U. S. Mutual Ac. Assn. v. Newman, 84 Va. 52, 59.
In Mutual Accident Association v. Barry, 131 U. S. 100, 111, the policy provided that it should not extend to any injury of which there was no external and visible sign. The trial court in charging said:
“It is true there must be an external and visible sign of the injury, but it does not necessarily follow from that that the injury must be external. That is not the meaning or construction of the certificate. Such an interpretation of the contract would, in the opinion of the court, sacrifice substance to shadow and convert the contract itself into a snare, an instrument for the destruction of valuable rights. Visible signs of injury, within the meaning of this certificate, are not to be confined to broken limbs 'or bruises on the surface of the body. There may be-other external indications or evidence which are visible signs of internal injury. Complaint of pain is not a visible sign, because pain you cannot see. Complaint of internal soreness is not such a sign, for that you cannot see, but if’ the internal injury produces, for example, a pale and sickly look in the face, if it causes vomiting or retching, or bloody or unnaturál discharges from the bowels; if, in short, it sends forth to the observation of the eye, in the-struggle of nature, any signs of the injury, then those are external’ and visible signs, provided they are the direct results of the. in jury.”
The insured sustained duodenitis' by jumping *403 from an elevated platform. The external and visible signs of bodily injury were that he was ill immediately after the injury, distressed in the stomach, vomited, and from that time retained nothing on his stomach, passed nothing but decomposed bloody mucus, and died nine days thereafter. By sustaining the recovery below, the upper court held these to be external and visible signs of bodily injury.
In Pennington v. Pacific Mutual Life Ins. Co., 85 Ia. 468, 470, plaintiff, a locomotive fireman, while on duty, was violently and accidentally injured by the lurching of a locomotive. He recovered upon an accident policy. This provided, “The insurance shall not cover * * # injuries of which there is no visible external mark upon the body of the insured. ’ ’ The injury sustained was a strain. It was contended the accident was without the policy because there was no visible mark of the injury upon the body. The court held, “The contract does not contemplate that there must be bruises, contusions or lacerations on the body, or broken limbs.” An effect of the strain was the disabled condition of insured. It was held that this was a visible, external mark of the injury upon the body of the insured.
In Freeman v. Mercantile Accident Asso., 156 Mass. 351, the policy provided, “That benefit under this certificate shall not extend to any case in which there shall be no symptom or visible sign of bodily injury. ’ ’ The insured died of peritonitis localized in the region of the liver. The trial court was asked by the defendant to. charge there must be an external sign of the bodily injury. This it declined to do and charged that if there were symptoms or signs which would become visible, and did become visible, upon examination by being able to inspect the interior of the body, it would be sufficient whether that examina *404 tion was .made before or after death. This was approved by the upper court.
Thayer v. Standard Life and Accident Insurance Company, 68 New Hampshire 577, was upon an accident policy; recovery by plaintiff. The facts being plaintiff’s shoulder was accidently injured by a fall causing pain and depriving him of the use of the arm. He was disabled thereby from attending to business. The policy provided that it should not cover “any injury fatal or otherwise of which there is no visible mark upon the body. ’ ’ Construing this provision, the court said:
“The visible mark upon the'body required by the policy need not be a bruise, contusion, laceration or broken limb, but may be any visible evidence of an internal strain which may appear within a reasonable time after the injury received. ’ ’
In U. S. Mutual Accident Asso. v. Newman, 84 Va. Rep. 52, 54, 62, the policy provided, “That benefits under this certificate shall not extend to any bodily injury of which there shall be no external visible sign upon the body of the insured. ’ ’ It was held that death of the body was an external and visible sign of bodily injury upon the body of the insured.
We think death of the body of the insured was a visible mark of injury upon the body within the meaning of the policy. Further, there was evidence of a localized redness of the tissues of the brain of deceased on the right side of the head. This was not revealed until the autopsy. This we think was a visible mark upon the body as provided in the policy. The terms of the policy did not require that the visible mark should be upon the surface of the body. •
3. The policy provided, ‘ ‘ Immediate written notice must be given said company * * * ' of any accident and injury for which a claim is to be made with full particulars thereof, and full name and ad *405 dress of assured. Affirmative proof of death must also he furnished to said company within two months from the time of death.”
Assured was injured October 26, at Davisville, California, so seriously that he immediately gave up his work as porter, went to bed in his car, was taken therefrom to his home in Denver on arrival of the train there, and was confined to bed almost continuously until-death November 11; much of the time in an unconscious condition. November 14 — three days after death — notice of the accident was given to appellant’s general agent on a blank form furnished and filled out by him, — printed thereon appearing: ‘ ‘ In case of accidental injury, or death, immediate notice with full particulars should he given on this blank to Charles D. Brooks, .Bank Building, Denver, Colorado, ’ ’ which notice, after signature by the representative of beneficiaries under the policy, was sent by the agent to defendant at St. Louis, and received there November 17. No objection was made to the notice not being in time until in defendant’s answer herein.
During November and December, Cowell, representative of the beneficiaries, called on agent Brooks several times for blanks for making proofs of death. Brooks never complained that the notice of accident was not in time, or said that the proofs would be useless, on the contrary, he promised to furnish the blanks, and told Cowell to feel no uneasiness, that the claim would he settled. February 3, he wrote Cow-ell, “Referring to our conversation this morning requesting you to delay matters regarding the death of D. H. Mondy until I could hear from St. Louis, I desire to say, by doing so, you will not in any manner prejudice the rights of the beneficiaries under this policy, and the request is made for the purpose of being fully informed from St. Louis regarding this *406 Company’s position, that I may properly advise you. Yours truly, C. D. Brooks, General Agent.”
Finally the company sent Brooks the blanks. • He gave them to Cowell, February 16, saying they were in response to his request. Cowell made proofs, delivering them to Brooks March 2, who forwarded them to the home office. No objection was made by the company, or by Brooks, that the proofs were too late. The claim later was declined on other grounds, the letter of rejection is as follows:
“ * • # * Mr. Harry Cowell, Administrator. Dear Sir. My company has after careful consideration of the claim made upon it on account of the death of D. IT. Mondy instructed me to notify you that upon the evidence and statements secured in this case it is apparent that Mr. Mondy died a natural death, * * * under the circumstances it is my unpleasant duty to advise you that this claim is formally disallowed for the reasons set forth. Yours truly, C. D. Brooks, General Agent. ’ ’
It is thus seen that the defendant notified of the accident November 14, furnished blanks upon which to give notice thereof, aided in filling out the blanks, and received the notice when prepared without complaint that it was in too late. It is also seen that without any suggestion that the notice was too late, the defendant promised to furnish the blanks for proof of death, and when dilatory in furnishing the blanks wrote above letter of February 3. After much delay the company did furnish blanks for the proofs of death. They were filled out and delivered to defendant without objection to their being after time. Finally the claim was rejected by defendant without complaint that either the notice of the accident, or that the proofs of death came too late. It first made such objection in its defense to this action. The authorities justify the conclusion that- sucK *407 course of- the company waived the requirements of the policy that immediate notice should be given of the accident and that the proofs of death should be furnished within sixty days.
Peabody v. Accident Association, 89 Me. 96, was upon an accident policy. October 19, plaintiff met with an accident causing injury. The policy required the company should receive written notice of the accident within ten days after its occurrence. November 2 written notice was sent, but not received until after the ten days had expired. Upon receipt of the notice the company sent plaintiff a blank containing questions to be answered as first proof of loss, with request to return within seven days. Plaintiff filled out the form answering all inquiries, and sent the same to the company. In November, the company forwarded to plaintiff another blank form to be used in making further and apparently final proof of loss. No other communication between the parties until March 27, when a representative of the company called upon the plaintiff and subjected him to a personal examination. March 28 the company advised plaintiff that it had decided to reject his claim. The court said:'
“Did all these acts taken together in effect constitute a waiver by the company of a merely technical forfeiture created by its receiving the notice of injury a few days later than was stipulated in the contract? We think that by deciding this question affirmatively we shall reach a just and equitable conclusion. * * * There are many cases which recognize the principle that when an insurance company accepts or assists in preparing second proofs of loss it thereby waives any defects in the first proofs.”
Trippe v. Provident Fund Society, 140 N. Y. 23. was upon an accident policy. This required notice of the accident to be given-within ten days from its hap *408 pening, and prescribed that failure to do so should invalidate all claims under the policy. The accident occurred August 22. Notice was served September 2, and retained by defendant without objection. Another was served the 15th of October. October 12, defendant, upon written application, furnished necessary blanks for proofs of loss. The proofs were made and forwarded to defendant in compliance with the terms of the contract and were retained without objection. March 19 defendant called for further- information, which was given. Defendant sought to avoid the policy upon the ground that the notice was not given within the ten days provided. The court declined to sustain the defense and in ruling said:
‘ ‘ It is well settled that such defenses are waived when the company, with knowledge of all the facts, requires the assured by virtue of the contract to do some act, or incur some- expense-or trouble inconsistent with the claim, that the contract had become inoperative in consequence" of a breach of - some -of the conditions. * * * The acts of the- defendant in receiving and retaining these papers without objection, and calling for others, are consistent only with the theory that the contract was still considered in force, and as the plaintiff acted accordingly in performance of its conditions, subsequent to the loss, the defendant ought not to be permitted now to change its position and assert that after ten days from the accident the obligations of the policy virtually ceased by reason of failure within that time to serve notice of death.”
In Goodwin v. Mass. Mutual Life Ins. Co., 73 N. Y. 480, 493, proofs were not furnished within the time prescribed by the policy. When furnished they were received without objection, and the refusal to pay the amount provided in the policy was based upon other grounds. Inter alia the court said:
*409 ‘‘ They sent their blanks to the plaintiff for making ont such proofs, induced the plaintiff to employ experts for the purpose of determining whether the policy had lapsed; did not return her the proofs after they were received, upon the ground that they were hot received in time, but kept them, and encouraged and induced the'plaintiff to bring an action to recover the amount insured. Their acts were not only a waiver of the failure to present the proofs within the time prescribed, but present all the necessary requisites of an estoppel against any such defense. They were decisive and explicit acts, showing that no objection was interposed to the time of furnishing the proofs, and entirely conclusive upon that question. That they transpired after the time had expired does not detract from their effect or render the waiver any less emphatic and decisive. The doctrine that there must be a new consideration after the time has elapsed for the presentation of proofs to constitute a waiver has never been upheld by this court, and it has not yet been held that the principle of estoppel, in so restricted a sense, is to be applied to cases of this character.” — See also Sheldon v. Nat. Masonic Accident Asso., 122 Mich. 403, 29 Ins. L. J. 488; Moore v. Wildey, 176 Mass. 418, 29 Ins. L. J. 798; Searle v. Dwelling House Ins. Co., 152 Mass. 263.
A review of the evidence in this case is convincing that the plaintiff was entitled to verdict and judgment below. No error prejudicial to defendant intervened in the trial. The judgment should be affirmed.

Affirmed.