## PENN MUT. LIFE INS. CO. v. TILTON.
### No. 1316.

Circuit Court of Appeals, Tenth Circuit.
May 29, 1936.
Rehearing Denied June 27, 1936.

Francis C. Wilson, of Santa Fe, N. M. (John C. Watson, of Santa Fe, N. M., on the brief), for appellant.

E. R. Wright, of Santa Fe, N. M., and W. C. Roche, of El Paso, Tex. (Donovan N. Hoover, of Santa Fe, N. M., on the brief), for appellee.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

This is an appeal from a judgment for plaintiff in an action to recover on a policy of insurance in the sum of $25,000 issued upon the life of Warren C. Spurgin. Plaintiff is the daughter and only child of insured. She instituted the action in the state court in October, 1933, and it was

seasonably removed to the United States court. A verdict for plaintiff was set aside and a new trial granted. Thereafter an amended complaint was filed, in which the case made was that the policy issued on February 19, 1921; that the annual premium paid and the grace period continued it in force for a period of 12 months and 31 days from that date; that the policy was payable to the executors, administrators, and assigns of the insured, but it was changed to make his wife, Myrtle I. Spurgin, the beneficiary; that insured and his family lived happily together in Chicago; that on or about July 14th, 1921, without domestic difficulty or unhappiness, he left his home and family and went to Chihuahua, Mexico; that he remained there until some time during October or November; that he then went to Canutillo in the Sierra Madre Mountains, which was a lawless country occupied and controlled by bandits who robbed, pillaged, and murdered foreigners without fear of punishment or injurious consequences; that upon information and belief he left Canutillo in February, 1922, in company with two members of the forces of Francisco Villa to visit certain mining property, and was never seen alive thereafter; that he wholly disappeared and his wife and daughter never saw him or heard from him afterwards; that on August 13, 1931, more than seven years after such disappearance, plaintiff advised the company of his death and requested blanks on which to submit proof of death; that the company failed to furnish such blanks, and denied any and all liability under the policy, thereby waiving further proof of death and eliminating the necessity of submitting it; that formal proof of death was submitted on October 19th; that the company rejected it and again denied liability; that, in order to avoid the immediate institution of suit, the company agreed with plaintiff in November to give additional time in which to further investigate insured's disappearance and absence; that in April, 1933, plaintiff learned that members of the forces of Francisco Villa killed insured in Mexico before March 22, 1922; that she immediately advised the company of that fact, and furnished additional information and affidavits from time to time thereafter as they were obtained; that the company ignored such supplemental proof and made no further demand for additional proof of death; and that for a valuable consideration Myrtle I. Spurgin assigned and transferred the policy to plaintiff on September 28, 1931.

After a demurrer to the amended complaint had been overruled, the company answered, in which it admitted that the policy was in force until March 22, 1922; denied that insured died prior to that date; admitted that certain correspondence passed between the parties beginning with the letter of August 13, 1931; admitted that a pretended proof of death was submitted in October, 1931; denied that such correspondence and pretended proof of death were sufficient to constitute the requisite proof as a condition precedent to liability; denied that it had denied liability under the policy or waived proof of death at the time and in the manner alleged; admitted the purported assignment of the policy, but denied that it vested any right in plaintiff, for the reason that at the date of such assignment the beneficiary had failed to make proof of death within a reasonable time, and thus had forfeited all claim under the policy.

The court determined as a matter of law that the company had waived the submission of proof of death. The issue of fact as to whether insured died before the policy lapsed was submitted to a jury. A verdict was returned for plaintiff. Judgment was entered thereon, and the company appealed.

The first argument advanced for reversal is that the court erred in holding as a matter of law that the company had waived proof of death as required by the terms of the policy. It is said that there could be no waiver because the proof was not filed within a reasonable time after the presumption of death arising from unexplained absence of seven successive years matured and that the right to make proof once lost through lapse of a reasonable time for that purpose is not revived by denial of liability; and that the letter of August 17, 1931, did not constitute such waiver because the company did not know at that time that the beneficiary claimed that insured died prior to March 22, 1922. The policy did not fix the time within which proof of death should be made. In the absence of a fixed period, the required proof must be made within a reasonable time. Metropolitan Life Ins. Co. v. Frankel, 58 Ind.App. 115, 103 N.E. 501. And the circumstances in each particular case determine what is a reasonable time for that purpose. But a provision requiring the

submission of proof of death within a fixed period or within a reasonable time, as the case may be, is for the benefit of the insurer, and it may be waived; and such waiver may be implied from acts and conduct on the part of the insurer. The attorneys for plaintiff wrote the company on August 13, 1931, requesting blanks upon which to furnish proof of death, and stating that, as soon as such proof was completed, it would be forwarded. The company replied four days later that the policy lapsed for nonpayment of premium on February 19, 1922, and that for such reason there was no liability; and it failed to furnish the requested blanks. Despite that failure, formal proof of death was furnished in October. Two affidavits accompanied it. One was made by the wife of insured, detailing all the known facts concerning his disappearance and continued absence. The other was made by Ray Brown, stating that he knew insured at Chihuahua; that he left there and went into the dangerous and lawless mountains west of Chihuahua in September or October, 1921; that he was reputed to carry a large sum of money on his person; that Brown never saw him afterwards; and that his death was currently reported. The company acknowledged the proof, but stated that it was insufficient to show that death occurred intermediate disappearance of insured and lapse of the policy; and that, if plaintiff had any evidence to establish definitely the fact of death during that period, the company would be glad to have it, otherwise the proof would be returned. On November 9th thereafter the company wrote the attorneys for plaintiff, noting that they were engaged in making an investigation with a view to obtaining additional information and stating: "We, too, have begun an investigation, and believe as you do that it will be well to let the matter rest in the meantime." In a subsequent letter, dated December 28th, the company acknowledged receipt of further information which plaintiff had recently obtained and said:

"Following receipt of your first letter we instituted a search and have gone to considerable expense in trying to locate Mr. Spurgin. Unfortunately our investigation has not yet been completed. You will appreciate that the investigation in this case is made difficult by the length of time that has elapsed since the insured is said to have disappeared.

"We are hopeful that our investigation will be concluded at an early date, and when it is, you may rest assured that we will communicate with you at once."

The attorneys for plaintiff advised the company by letter dated July 13, 1933, that, in addition to other facts already supplied, a person who had been a member of the forces of Francisco Villa was then available and would testify that he knew insured and that insured was killed by Villistas prior to March 22, 1922. In its acknowledgment of that letter, the company stated on July 25th that it had gone over the matter fully and had concluded that there was no liability. Under date of November 21, 1934, the attorneys for plaintiff wrote the company that one Delgado had testified at the first trial; that the attorney who represented the company at the trial had a transcript of the testimony given by the witness and inclosed an affidavit made by Delgado, in which it was stated that he first met insured at San Fermin, Mexico, during the month of December, 1921; that thereafter insured came to the camp of Francisco Villa at Canutillo and remained in that vicinity for some time; that affiant saw him many times during that period; that some time in February, 1922, affiant saw him leave Canutillo with some Villistas; that during the last days of February Villa sent affiant to search for insured and to bring back two certain Villistas who had accompanied him; that affiant captured the two Villistas; that they confessed the murder of insured and pointed out the place where his body was buried; that affiant had the body uncovered and recognized it as that of insured. Throughout all of the correspondence the company never suggested undue delay in submitting proof of death. It never intimated that it denied liability on account of such delay. Instead, it denied liability in its letter of August 17th solely on the ground that the policy had lapsed; and in its letter of October 31st it stated that the proof of death was insufficient to show that death occurred after disappearance of insured and prior to lapse of the policy—not that the proof came too late. In addition, it invited further evidence tending to establish death prior to lapse. In its letter of November 9th it noted that plaintiff was engaged in making an investigation, and, instead of suggesting that it was a useless expenditure of effort and expense because the proof had not been submitted within the required time, it stated that it, too, had begun an investi-

gation and joined in the belief that the matter should rest for the time being. In its letter of December 28th it repeated the statement that an investigation was under way; that it was made difficult by the length of time which had elapsed since insured was said to have disappeared, and that, as soon as it was completed, the company would communicate further with the attorneys for plaintiff. Thus the repeated denial of liability was expressly predicated upon lapse of the policy, not unreasonable delay in submitting proof of death; and the rejection of the proof expressly rested upon failure to establish death before lapse, not undue delay in submitting the proof. That is not all. Waiver of proof was expressly alleged in the original complaint, and it was unconditionally admitted in the original answer; and that part of the pleadings was introduced in evidence on the second trial as an admission. These facts constitute a clear and complete waiver of proof of death. Equitable Life Assur. Society v. Winning (C.C.A.) 58 F. 541; Federal Life Ins. Co. v. Wells (Colo.) 56 P.(2d) 936; Pagni v. New York Life Ins. Co., 173 Wash. 322, 23 P.(2d) 6, 93 A.L.R. 1325; Supreme Lodge, Knights of Pythias v. Wilson (Tex.Civ.App.) 204 S.W. 891; Peabody v. Fraternal Accident Ass'n, 89 Me. 96, 35 A. 1020; Trippe v. Provident Fund Society, 140 N.Y. 23, 35 N.E. 316, 22 L.R.A. 432, 37 Am.St.Rep. 529; Douville v. Pacific Coast Casualty Co., 25 Idaho, 396, 138 P. 506, Ann.Cas.1917A, 112; Metropolitan Life Ins. Co. v. Eoff, 146 Okl. 193, 293 P. 1025; Breeden v. Aetna Life Ins. Co., 23 S.D. 417, 122 N.W. 348; Hardie v. Metropolitan Life Ins. Co. (Mo.App.) 7 S.W.(2d) 746; United States Fidelity & Guaranty Co. v. Miller, 237 Ky. 43, 34 S. W.(2d) 938, 76 A.L.R. 12; Daniel v. Fireman's Fund Ins. Co. (C.C.A.) 46 F.(2d) 784.

Next it is urged that the court erred in instructing the jury with respect to the presumption of death from an unexplained absence of seven successive years. That part of the instructions concerning such presumption and the necessity to prove that insured died before the policy lapsed reads:

"You are instructed that a person shown not to have been heard of for seven years by those who, if he had been alive, would naturally have heard from him, is presumed to be dead, unless the circumstances shown in the case are such as to account for his not having been heard of without assuming his death; but you are instructed that such presumption is not conclusive; and the same may be rebutted by proof of facts and circumstances which would otherwise explain his absence, or by any other proof which would establish that he was alive at any time subsequent to the expiration of the seven year period.

"Although a person who has not been heard of for seven years is presumed to be dead the law raises no presumption as to the time of death. In this case, it is necessary for the plaintiff, in order to maintain this action, to show that death occurred during the life of the policy, that is, prior to March 22nd, 1922, the same being the expiration date of the policy of insurance here sued upon; that is stipulated and agreed to by the parties. In other words, in this case, it is necessary for the plaintiff to establish by a preponderance of the evidence that Warren C. Spurgin died at some date prior to March 22nd, 1922, that is, midnight of that day, and this fact must be established by evidence, and cannot be established by the mere presumption of death resulting from an unexplained absence for seven years.

"In order to establish that the death of Warren C. Spurgin occurred prior to midnight of March 22nd, 1922, the same must be established by evidence, but such death may be established by circumstances, as well as direct evidence, and in this connection I instruct you that if you are satisfied from the evidence, and from a preponderance of the evidence, that Warren C. Spurgin was last seen or heard of at a place under circumstances which placed the said Warren C. Spurgin in imminent peril and danger of death, and that he was not thereafter seen alive or heard from by those who would naturally hear from him, that such facts, if you find them to have been established in this case, may be taken into consideration by you in determining whether Warren C. Spurgin died prior to midnight of March 22nd, 1922."

The presumption of death from unexplained absence is a familiar doctrine. In the absence of a controlling statute providing otherwise, it is presumed in law that a person continues to live seven years after his unexplained disappearance, and, if he is not seen alive and his relatives, associates, or friends with whom he would naturally communicate receive no word from him, the presumption of life terminates at the end of such period and that of death arises.

14

Plaintiff relied in part upon that presumption, and there was testimony that insured and his family lived happily together in Chicago; that he and his wife were mutually thoughtful, considerate, and affectionate; that his wife and daughter were entirely dependent upon him; that he was president of the Michigan Avenue Trust Company; that on July 15, 1921, he told his wife he was in trouble at the bank; that he gave her $750 in cash, told her the rent on the apartment was paid to October 1st, bade her and his daughter goodbye, and left with the statement that he would never return to Chicago, but would send for them; that in October or November his wife received a letter from him postmarked Chihuahua, in which he expressed love and affection for her and their daughter and enclosed $1,000; that his wife and daughter made such search and inquiries as their circumstances and financial condition would permit, but they never saw him nor heard from him again. He and the vice president of the bank were indicted jointly. The vice president asked for an immediate trial and the indictment was dismissed as to him. That testimony was not enough within itself to justify recovery, because it was necessary that plaintiff establish the death of insured before March 22, 1922. In order to prove that requisite fact, testimony was produced tending to show that he left Canutillo late in February in company with two Villistas and went into a rugged country which was infested with thieves, robbers, and murderers; that a few days later the two Villistas confessed that they had murdered him and designated the place at which the body was buried, and that the body was uncovered and recognized. Exposure to specific and imminent peril which might easily result in death and the fact that insured was never heard from again were circumstances from which the jury could draw the inference of immediate death, that is, prior to the date on which the policy lapsed. Davie v. Briggs, 97 U.S. 628, 24 L.Ed. 1086; Northwestern Mutual Life Ins. Co. v. Stevens (C.C.A.) 71 F. 258; Brownlee v. Mutual Benefit Health & Accident Ass'n (C.C.A.) 29 F.(2d) 71; Caldwell v. Modern Woodmen of America, 89 Kan. 11, 130 P. 642; Gaffney v. Royal Neighbors, 31 Idaho, 549, 174 P. 1014; Mitchell v. Brotherhood, 103 Neb. 791, 174 N.W. 422; Fanning v. Equitable Life Assur. Society, 264 Pa. 333, 107 A. 715.

But the precise and narrow point urged here is that the absence of insured was fully explained by his default at the bank and the fact that he was indicted for it; and that for such reason the presumption of death did not arise. The sudden disappearance and continued absence of a person for more than seven years without tidings to those who would naturally hear from him creates a presumption of death, even though he was a defaulter or had committed some other violation of law at the time of his disappearance. The fact that he had committed an offense and was a fugitive from justice may be invoked to rebut the presumption. It may tend to explain his absence and thus weaken or overcome the presumption, but that issue of fact is for the jury. Fuller v. New York Life Ins. Co. (C.C.A.) 199 F. 897; Axen v. Missouri State Life Ins. Co., 203 Iowa, 555, 213 N.W. 247; Rodskier v. Northwestern Mut. Life Ins. Co., 216 Iowa, 121, 248 N.W. 295; Equitable Life Assur. Society v. James, 73 Ind.App. 186, 127 N.E. 11; Meckert v. Prudential Ins. Co., 114 N.J. Law, 320, 176 A. 587; Mutual Benefit Life Ins. Co. v. Martin, 108 Ky. 11, 55 S.W. 694; Winter v. Supreme Lodge, Knights of Pythias, 96 Mo.App. 1, 69 S.W. 662. An attempt is made to draw a distinction between explained and unexplained absence. It was for the jury to determine whether the disclosed facts relating to the default and the indictment explained the absence of insured, and, if so, whether the explanation was sufficient to overbear the presumption of death. The facts relating to the default are fragmentary, neither the nature nor extent of it being shown. We cannot say that they explain the absence to the exclusion of the presumption of death. It is plain that the court was right in submitting the question to the jury, and all parts of the instructions having relation to the question must be considered together. When thus considered, the jury was told that the disappearance and continued absence of a person for seven successive years without tidings to those with whom he would naturally communicate, creates a presumption of death; that the presumption may be rebutted by facts and circumstances which explain the absence or which show that he was alive after the expiration of the seven year period; but that, in order to recover, it was incumbent upon plaintiff to prove that insured died before

midnight of March 22, 1922; that such fact could not be established by the presumption alone; and that it could be established by direct evidence or by circumstances. After explaining the elements which create the presumption of death, the court straightway admonished the jury that plaintiff could not recover upon it alone; that she must establish death before the date on which the policy lapsed and that the presumption could not suffice for that purpose; and the necessity of establishing death before lapse was subsequently reiterated with such clarity that the jury could not well have failed to understand it. On the contrary, the jury must have understood the question to be determined and the respective purposes for which the different parts of the evidence could be taken into consideration. No prejudice is perceived from the manner in which the issue was submitted.

Finally, it is said that plaintiff did not sustain the burden of proof in establishing the death of insured before the policy lapsed, and therefore the court should have directed a verdict for defendant. An extended review of the evidence would unduly lengthen this opinion and would serve no useful purpose. Both parties relied upon two photographs as a means of identifying insured. Using them for that purpose, Delgado testified that he had known insured at San Fermin and at Canutillo, and that he subsequently saw the remains. Several witnesses for defendant testified that they had seen insured at various places in Mexico and at San Antonio, Tex., long after March 22, 1922. None of the witnesses knew him prior to his disappearance. All of them identified the person about whom they testified from the photographs. Two said that he responded to the name Spurgin, others that he was called Edwards; and the remaining testimony is silent in that respect. Defendant offered evidence which tended to show that Delgado was not at Canutillo in February, 1922; but, of course, that merely affected the weight which the jury should give to his testimony. The whole evidence presented an issue of fact for the jury. The jury resolved it against the company. The finding is supported by substantial evidence, and it will not be disturbed on appeal. That rule is too firmly established to merit the citation of cases.

The judgment is affirmed.