[No. 7806.]

## NEW YORK LIFE INSURANCE COMPANY v. HOLCK.

1. PLEADING—*Construction—Conclusions,* based upon sufficient preceding allegations of fact, are not to be stricken. (417.)

2. —— *Construed.* A statement of facts from which another fact is necessarily inferred is equivalent to the express averment of the fact so inferred.

Action upon a life policy conditioned for the payment of the insurance upon the death of the insured. The complaint alleging the disappearance of the insured, absence without tidings for more than seven years, and ineffective diligent search to ascertain his whereabouts, sufficiently shows the death. (417-419.)

3. DEATH—*Presumption from Absence.* One who has been absent from his former abode for seven years or more, without communicating with his relatives and close friends, and without tidings from him, is presumed to be dead unless the circumstances account for his absence and silence, without assumption of death. (425.)

Diligent inquiry for the absentee by those invoking the presumption must be shown. (426.)

Evidence as to the age, habits, and health of the absentee is admissible, because bearing upon the probable duration of his life. (430.)

The mortuary table prescribed by statute (Rev. Stat. sec. 2490) is admissible for the same reason. (431.)

The presumption is not indulged where the circumstances of the disappearance indicate that absence and silence were necessary to accomplish the purpose of the absent one.

Each case rests upon its own circumstances. (428.)

4. —— *Question for the Jury.* Generally, the question whether death shall be presumed from an unexplained absence is for the jury. The evidence examined and held that the question was properly left to the jury. (429, 430.)

5. —— *Instructions.* The charge should distinctly present to the jury the proposition that mere absence and silence do not raise the presumption of death, if from all the evidence the absence is accounted for without indulging the presumption. (432.)

The instructions examined, and held insufficient to properly advise the jury in this respect. (432, 433.)

*Error to Denver District Court.*    Hon. GEO. W. ALLEN, Judge.

Mr. CHARLES W. WATERMAN, Mr. CALDWELL MARTIN, and Mr. JAMES H. McINTOSH, for plaintiff in error.

Mr. H. A. HICKS, Mr. HORACE N. HAWKINS, and Mr. CHARLES ROACH, for defendant in error.

GABBERT, C. J., delivered the opinion of the court.

In February 1894, the New York Life Insurance Company issued a policy on the life of one James Holck, payable on his death to his wife, Nora D. Holck. In May, 1911, the beneficiary instituted an action against the insurance company to recover on this policy. Her right to recover was based upon the ground that the insured had disappeared, and had not been heard from for more than seven years prior to the commencement of her action. The complaint also alleged the various steps taken by plaintiff to ascertain and learn the whereabouts of the insured, and whether he was alive. The trial resulted in a verdict and judgment in favor of plaintiff, to review which the insurance company has brought the case here on error.

A general demurrer to the complaint was interposed, based upon the ground that it did not allege the death of the insured, which was overruled, and this is assigned as error. The theory of the complaint was that the insured was presumed to be dead, because he had disappeared, and had been absent for more than seven years without tidings, and that diligent search and inquiry had been made to ascertain his whereabouts. In other words, plaintiff did not ground her action upon knowledge of the actual death of the insured, but upon allegations of fact, from which it would be presumed he was dead. It is not claimed that the averments in the complaint are not sufficient to raise this presumption, but its sufficiency is attacked solely upon the ground that it does not specifically aver the death of the insured. When

the facts stated in a pleading are such that the ultimate fact upon which the pleader relies can be fairly inferred, it is good as against a general demurrer. *Downey v. The Colorado Fuel & Iron Company,* 48 Colo. 27, 108 Pac. 972, or to otherwise state the proposition, when the law presumes a fact from other facts stated, or that fact is necessarily implied from the statements made in a pleading, it is equivalent to an averment of such fact. The object of a complaint is to inform the defendant of the precise ground upon which the plaintiff predicates his cause of action, and which the defendant will be called upon to meet in order to defend against it; and hence in an action upon a life insurance policy, based upon the presumption of the death of the insured, the complaint is sufficient, when, from the facts alleged, such presumption arises. *Moffit v. Varden,* 17 Fed. Cas. 561; *Ruoff v. Greenpoint Savings Bank,* 40 Misc. 549, 82 N. Y. Sup. 881; *White v. Emigrant Industrial Savings Bank,* 146 Ap. Div. 591, 131 N. Y. Sup. 311; *Modern Woodman of America v. Gerdon,* 72 Kan. 391, 82 Pac. 1100, 2 L. R. A. (N. S.) 809, 7 Ann. Cas. 570; and again considered in 77 Kan. 401, 94 Pac. 788; *Davie v. Briggs,* 97 U. S. 628, 24 L. Ed. 1086. It is true that in none of these cases was the sufficiency of the complaint raised or passed upon, but in each of them it seems to be assumed that the averments of fact which made it appear that death will be presumed, is sufficient to state a cause of action, when based upon such presumption. This necessarily follows, because in such cases "actual" death cannot be alleged, and in these circumstances there is no other method by which the pleader can allege the death of the insured than by apt averments of facts from which it will appear his death is presumed.

Following the averments respecting the disappearance of the insured, and his absence without tidings, it was stated: "And by reason of said disappearance for said period of more than eight years, the said James Holck became and was, and is legally dead, and became and was and

has been legally dead." The defendant moved to strike this portion of the complaint upon the ground that it was a mere conclusion, insufficient to constitute an allegation of fact, which motion was denied. It is the general rule that a portion of a pleading which is nothing more than a legal conclusion should be stricken on motion, but this does not apply to a conclusion based upon averments preceding, when from such averments such conclusion can be deduced. In any event if the motion was well taken, the refusal to sustain it did not prejudice the defendant. The issue tendered by the plaintiff was the allegation of facts from which the death of the insured could be presumed, and the portion above quoted was surplusage which in no sense strengthened the complaint, or tendered an issue, as the right of plaintiff to recover depended entirely upon establishing facts from which the death of the insured would be presumed, and not upon any legal conclusion pleaded as deducible therefrom.

Counsel for the defendant company contend that the presumption of death, arising from seven years' absence without tidings, merely takes the place of evidence, by operation of law, which operates to determine on which party rests the duty of proceeding with the evidence, and cannot be invoked to aid in the construction of a pleading. We are dealing with a pleading the sufficiency of which is challenged for want of the averment of necessary facts, and not with the burden of proof. *In Re Benjamin*, 77 Misc. 434, 137 N. Y. Sup. 758, cited by counsel, does not support their proposition. In that case it was said: "The so called presumption of death is a mere rule concerning burden of proof." This was not stated in considering a complaint, but in calling attention to the proposition that the testimony intended to establish such presumption might not be sufficient "to shift the onus to those asserting continued life." All that was decided in that case is stated in the syllabus, which reads: "The presumption of death after seven years' absence may be rebutted by any inherent circumstance, or expressly, and

is applicable only when it is an irresistible inference from the facts found," from which it appears that the case determined a question of evidence, and not of pleading. Neither is *Connecticut Mutual Life Insurance Company v. King*, 47 Ind. Ap. 587, 93 N. E. 1046, in point on the question of the sufficiency of the complaint. The action was by the beneficiary of a life insurance policy, based upon the ground that the insured was presumed to be dead. The controlling question related to the law governing the presumption of death. The court said: "The suit being upon a contract of insurance on the life of Presley T. Buckner, there can be no recovery, unless it is charged in the complaint, and shown by the proof that Buckner is dead. Nowhere in the complaint is there a direct allegation of death. After setting out the fact of the disappearance of Buckner, and the further fact that he had not been seen or heard of since February, 1867, it is then averred, 'That in February 1867, by virtue of the premises and in presumption of law, said Presley T. Buckner died.'" The court then said: "The averment of presumptive death is insufficient. Facts and not presumptions, conclusions, or the evidence of facts must be pleaded." Thus making it clear, when we refer back to what the complaint stated with respect to its averments upon which the presumption of the death of the insured was predicated, that it was insufficient to raise such presumption, and it was not held that the failure to directly allege the death of the insured, constituted the insufficiency of the complaint, but ruled that in the absence of such an allegation, in connection with a failure to aver sufficient facts, from which the death of the insured could be presumed, the complaint was insufficient.

In *Bradley v. Modern Woodmen of America*, 146 Mo. App. 428, 124 S. W. 69, cited by counsel for the insurance company in support of their contention that the complaint is not sufficient, the action was to recover on a policy of insurance, based on the presumption of the death of the

insured from his absence.    The policy involved lapsed, shortly after the disappearance of the insured, and it was held that the petition was insufficient because it failed to aver the death of the insured prior to the lapse of the policy. This holding was undoubtedly correct, for the reason, as stated in substance in the opinion, that the presumption of death arising from facts properly pleaded, raises no presumption as to the time of death; but this is not applicable to any question involved in the case at bar.

At the conclusion of the evidence the defendant moved for a directed verdict based upon several grounds, which in effect were that the testimony was insufficient to make a case in favor of plaintiff.    This motion was overruled. Whether or not the ruling on the motion for a directed verdict was correct, must therefore, be tested by a consideration and an analysis of the testimony.

Holck was a blacksmith, and had been engaged in that business at Black Hawk and Central City for several years. On the evening of February 22, 1902, he came home under the influence of liquor, and he and his wife had a disagreement about the payment of the premium then due on the policy, and his drinking.    He denied that he had the money to pay the premium; said he had a month's grace, and intended to sell the policy.    They retired as usual, but evidently the quarrel was serious, as he left the next morning without speaking to his wife, went down town without his breakfast, and never returned to the house, although he remained in Central City until April 1st, following.    During this period neither made any effort toward reconciliation. They met on the street at least once, but did not speak. They had one child, a daughter about six years old.    Plaintiff sent her to the shop several times to see her father, but he seemed inclined to avoid her.    About two weeks after he left his house, he sent for and obtained some of his clothing.    April 1st, 1902, he came to Denver.    Previous to this he sold his shop and contents, which was all the property

he owned. On the day he left he met his little daughter on the street, embraced her, said he was going away, gave her money to buy candy, and kissed her good-by. At this time he was owing several bills to sundry persons, which he never paid. Shortly before leaving Central City, he stated that his wife "makes it hell on earth to live with her"; that he was going to South Africa, where she could not find him, and that she would never hear from him again. While in Central City, both before and after leaving his home, Holck was drinking to excess.

Subsequent to the date Holck left his home, and before going to Denver, arrangements were made to secure a loan on the policy from the company, by a representative of both Holck and wife. April 2nd, at the request of Mrs. Holck, this representative came to Denver to obtain the loan from the company. The draft for the loan was made payable to Holck and wife jointly, and Holck refused to indorse it unless he was paid part of the proceeds. This was adjusted by paying Holck one-half of the amount of the loan, after deducting the premium then due. A few days later the same representative saw Holck in Denver at the request of Mrs. Holck, regarding his indebtedness at Central City. At none of these interviews did Holck express any intention of returning to his home. This subject was not mentioned. He did say, however, that he intended to straighten up, and go to work; that he wanted to do what he could for his little daughter; "that I intend to take care of that girl and treat her right"; that the best thing he could do for her was to take care of the policy; that it was all he had to leave her; that he was going to pay the loan and premiums, and he could tell the folks so. Holck was, and had been a very hard drinker, and much of the time was in a drunken condition to the extent that he neglected his business, would lock up his shop, and spend a good deal of his time around the saloons drinking. His face was bloated, his eyes blurred, his mind not clear, and it was difficult to get him to talk

rationally about business matters. In Denver he was drinking to excess, but obtained employment at his trade, working for about two weeks when he disappeared without telling any one when or where he was going, or his purpose in leaving. At this time he was about forty-one years of age, and in good health, except as it might have been affected by the excessive use of liquor. His family did not hear from him until Christmas following, when his little girl received an express package addressed to her at Central City in a strange handwriting, without any mark to indicate from what point it had been sent. It contained some clothes, a ring, and a bag of chocolates, all for the child, with a note in Holck's handwriting which read, "From papa to Elma," or "From papa to Tootsie." The package did not contain anything for Mrs. Holck, or any message for her. She went to the express office and endeavored to ascertain where the package was sent from, and was told by the agent that he could not tell. She offered to pay him for his trouble, but he said he could not find out because it had been transferred so many times. It appears from the testimony that Holck was very fond of his daughter, and she of him. Shortly after the period of a year had elapsed from the time Holck left Denver, Mrs. Holck obtained a divorce on the ground of desertion. Service was by publication. The custody and control of their minor child was awarded to Mrs. Holck.

At the time of the trial Holck had four sisters and one brother living, whose depositions were read in evidence. One sister, who resided in Michigan, testified that she last saw her brother in Central City in 1896; that she had no correspondence or communication from him since that date; that prior to 1902, she received letters from his wife three or four times a year, who always did the writing, and that she knew nothing regarding his whereabouts. Another sister residing in Indiana, stated that she last met her brother about thirty-six years ago; that she knew nothing of his whereabouts; that prior to 1902, she was not accustomed

to receive letters or visits from him; that when she last heard from him he was living in Black Hawk, which was about thirty-five years ago. The sister living in Nebraska testified that she had not heard from her brother, or received any communication from him since February 1902; that she last saw him in Black Hawk in 1898 or 1899. Under direct examination she stated that prior to 1902, she was accustomed to receive letters from her brother, but on cross-examination stated that she had never received any letters from him since she last saw him, but had received letters from his wife. The other sister, who resides in Iowa, stated that it had been over twenty-five years since she last saw or heard from her brother, but that about fourteen years ago his wife wrote her several letters. She also stated that about seven years ago her husband told her that some one told him, Holck had been seen in Kansas City, but she did not know who made this statement to her husband, who had been dead about four years. Mrs. Holck testified that while she and her husband lived together he always corresponded with his sisters. His brother stated in his deposition that he resided in Chicago, and that he had never seen or received any communication from his brother for twenty or twenty-five years. Mrs. Holck testified that there appeared to be some feeling between Holck and his brother, and that he never talked about nor corresponded with him.

From time to time Mrs. Holck made efforts to ascertain the whereabouts of the insured by making inquiries through the lodges or orders of which Holck was a member, as well as others who had been acquainted with Holck, and traveled extensively, and by publishing advertisements in newspapers with offers of reward for information as to his whereabouts, in Denver, Central City, Chicago and Kansas City. A number of newspapers copied these advertisements in substance, and commented on the disappearance of Holck. Her counsel also made inquiries of sundry persons who knew Holck well. At the time Mrs. Holck made formal demand upon the com-

pany for the payment of the policy, she was advised by the company that the matter of Holck's disappearance had been referred to its inspection department, which was making an investigation to find him.

On behalf of defendant there was testimony to the effect that in the early part of 1904, a letter post marked Bisbee, Arizona, was received from Holck, addressed to the son of a former partner, asking whether any money due the former partnership had been collected, in which Holck stated that he was without funds and needed money. This letter was lost, but was not answered, as there was no money to send Holck. A witness also testified that he knew one Anderson, who was well acquainted with Holck; that in September 1910, Anderson, who was then confined to his bed and had since died, stated to him, that for a period of fully two years after Holck left Denver he received letters from him, from various points throughout the country; that he could not recall the places from which the letters were posted, and had destroyed them as they were of no importance. Another witness testified that in January 1910, he talked with a blacksmith (since dead), who stated he had heard that Holck was in Australia and later in Iowa. One Parsons, who knew Holck well, testified that while in Seattle in 1908, he saw a man on the street wearing a blacksmith's apron he thought was Holck. It appears from the testimony that formal demand for the payment of the policy was made upon the company by plaintiff April 10th, 1911.

The general rule is that if a person has been absent from his residence for the period of seven years or more, and in that time has not been heard of or from, by any one who would naturally hear from him were he alive, the presumption arises that he is dead, unless the circumstances are such as to account for his not being heard of or from without assuming his death. *Davie v. Briggs,* 97 U. S. 628, 24 L. Ed. 1086; Hammon on Evidence, 252; Stephen on Evidence, 149; 1 Elliott on Evidence, § 113; *Watson v. England,*

60 English Rep. (Reprint) 266; *Bowden v. Henderson,* 65 English Rep. (Reprint) 436; *Hopfensack v. City of New York,* 173 N. Y. 321, 66 N. E. 11; *In re Miller's Estate,* 9 N. Y. Supp. 639; *In re Benjamin, supra; Wright v. Jones,* 23 N. D. 191, 135 N. W. 1120. It must also appear, in order to raise the presumption of the death of a person after seven years absence without tidings, that diligent inquiry and efforts have been made to ascertain his whereabouts. Elliott on Evidence, *supra.*

In considering the motion for a directed verdict, the vital question is the sufficiency of the testimony to establish the death of the insured, based upon the presumption that it had occurred because of his absence without tidings. Subject to any particular rule applicable to this question of fact, it was proper to submit it to the jury for their determination, if there was a substantial conflict in material testimony bearing on that question; or if it was of such a character, taken as a whole, that its determination depended upon inferences to be drawn from a variety of facts and circumstances, in the consideration of which there was room for substantial difference of opinion between intelligent and upright men. We think the testimony establishes that Holck left his home without intending to return; that he intended to abandon his wife; that his purpose in leaving was to seek a place where she could not find him; that she believed he had deserted her, having secured a divorce upon that ground, and that, in the circumstances, it is not strange his sisters or brother did not hear from him, and, therefore, his absence and silence can be fairly and reasonably accounted for so far as these parties, and others of whom inquiries were made, are concerned without assuming his death. If these were the only circumstances to consider, and the only testimony relied upon to establish the presumption of death, we should rule on the record now before us, that it is insufficient. The principle upon which the presumption of death arises from absence and silence is that the absentee, if living, would

probably have communicated with friends and relatives, but that presumption does not arise when absence and silence would be necessary to accomplish the purpose for which he left. But we have the failure of Holck to communicate with his daughter to consider. He entertained a strong affection for her. It was his custom to make her presents on Christmas, and he did so the Christmas following his disappearance from Denver, inclosing a note in the package indicating that his affection for her had not waned. Before leaving Denver he stated that he intended to take care of and treat her right. Affections which usually control conduct are competent to consider in determining whether death is to be presumed from absence and silence. We cannot say, however, that the failure of the insured to communicate with his daughter, subsequent to Christmas 1902, is sufficient upon which to base the presumption of his death.. In sending her the Christmas package he failed, possibly intentionally, to acquaint her with the place where he was then sojourning. The object of this may have been to conceal his whereabouts from his wife, and his failure to communicate with his daughter since that date may have been for the same reason. Again he may have continued to use liquor to excess, and thus formed such habits and been so affected that his regard for his child may have ceased, so that the testimony is such, that in considering it, a difference of opinion would naturally arise, and hence, is for a jury to consider in determining whether or not the silence of the insured, with respect to his child, could be accounted for without assuming his death. That in these circumstances the case should be submitted to a jury under appropriate instructions, see *Fuller v. New York Life Insurance Company*, 199 Fed. 897, 118 C. C. A. 227.

The position of counsel for defendant in error, with reference to the presumption of death, as stated in their brief, is as follows: "That proof of seven years absence from the last known place of residence of the absentee, with-

out tidings to those who would be most likely to hear from him, plus diligent search and inquiry to learn his whereabouts, raises the presumption of death under all circumstances; that such presumption so raised is not an absolute one, but upon proof of the above facts, the burden of showing that he is living shifts to the party asserting that such absentee is alive, and the circumstances under which the absentee left his place of abode merely go to the question of rebutting the presumption, after it is once raised by seven years absence as above stated." They also contend that: "Diligent search and inquiry will have the effect of raising the presumption of death after seven years absence from home, although the circumstances indicate that the absence may have been designed to be permanent, and although its continuance may be explainable upon some other theory than that of the death of the absentee." This is not the law, although in some respects, at least, the trial court so charged the jury.

Counsel for plaintiff cite several authorities in support of their propositions. Each case must necessarily depend upon its own facts, and the law as therein declared is limited accordingly. Many of the authorities cited do state that absence of a person from his usual abode for seven years without being heard from, rebuts the presumption of the duration of life, but in these cases there were no facts from which it could be said that absence and silence could be accounted for without assuming his death, so that the law as stated was correct when applied to the facts of the case. In other cases the declaration was made in construing a statute on the subject, or they hold, as in *Policeman's Benevolent Association v. Ryce,* 213 Ill. 1, that the unexplained absence of a person from his usual place of abode for seven continuous years, and from whom no intelligence has been received within that time, raises a presumption of death, where no sufficient facts or circumstances are proven to overcome the presumption, which is, as we have already

stated, in substantial accord with the rule of law on the subject. In other cases the propositions for which counsel contend are very much modified. If, however, we are not strictly accurate in the analysis of these authorities, we adopt as applicable to this case, the general rule above announced. It has the sanction of the Supreme Court of the United States, is reasonable, and as the question is one of first impression in this state, we should in determining it follow the ruling of the highest tribunal in the land, when there is nothing in our laws which render it inapplicable. In the recent case of *Fuller v. New York Life Insurance Company, supra,* it was expressly held that one relying on unexplained absence must prove it, and must prove more than the mere fact of absence, by producing evidence to justify the inference that death is the probable reason why nothing is known of the missing person.

It is also suggested, in the briefs of counsel for defendant, that the inquiries and publications which were made to locate Holck were not sufficiently wide spread or exhaustive. We shall not pass on this subject as the judgment must be reversed for other reasons which we will notice later. Generally speaking, this is a question for the jury, and what would be sufficient in the way of efforts to locate the missing person, should be measured by the circumstances of each particular case. Subject to this rule, the law is that the search and inquiry must be diligent, and this means that degree of diligence which the definition of the word implies.

Counsel for defendant contend that the testimony, the purpose of which was to show that within seven years next preceding the formal demand for the payment of the policy, Holck had been seen or heard from, required the trial court to sustain the motion for a directed verdict. The most that can be claimed for this evidence is, that it was for the jury to consider, and to give it such weight as in their judgment it was entitled. The testimony that Holck was seen in Kan-

sas City and Seattle is vague, and indefinite. The letter from Bisbee may have been received more than seven years before April 10th, 1911. The same can be said of the statement made by Anderson, and the dates when Holck was heard of as being in Australia and later in Iowa.

Errors are assigned by counsel for the company on the rulings of the trial court in admitting evidence mentioned in their brief under specification III. In disposing of the questions thus raised, we think it sufficient to say that none of this evidence was material to a single issue between the parties, and should have been excluded.

On behalf of defendant mortuary tables were offered and refused. Section 2490, Revised Statutes 1908, provides:

"That in all civil actions, special proceedings or other modes of litigation in courts of justice, or before referees, or other persons having power and authority to receive evidence, whenever it shall be necessary to establish the expectancy of continued life of any person from any period of such person's life, whether he be living at the time or not, the table set out in section 2 hereof shall be received as evidence, together with other evidence as to health, constitution, habits and occupation of such person of such expectancy."

Then follows the table from which it appears that the expectancy of the insured at the time of his disappearance from Denver was twenty-seven years and a fraction. The purpose of the section above quoted is to make the mortuary table, to which it refers, admissible in evidence in a case when the expectancy of life is material to any question involved. In considering the presumption of death, based upon absence without being heard from, it is always material to consider age, habits, and health of the absentee, for the reason that they bear on the probable duration of hi life. For the same reason the expectancy of continued lif in such cases is proper to consider, "together with other evi dence, as to the health, constitution, habits and occupatio

of such person of such expectancy." The statute has made such table competent as evidence, and we think it should have been admitted, not as conclusive as to the duration of the life of the insured, but for the consideration of the jury, and by them to be given such weight as in their opinion it was entitled in connection with all other testimony competent and material to consider in determining whether or not the insured was dead.

The court instructed the jury to the effect; that the law presumes one who has left his home and remained away, is dead at the end of seven years after last heard from. But this presumption, however, does not arise from the mere fact of absence and failure to communicate with his family, as in addition there must be proof of diligent efforts made to find the absent party, and it must be shown that after such efforts, it cannot still be learned that the absentee was alive within the seven year period. The instruction then continued to the effect that the presumption of death, when it arises, is not a conclusive one, but may be rebutted by the evidence in the case, and that it was for the jury to say whether the facts introduced in evidence were such as to cause the presumption of death to arise, and even if they find that the facts in the case are such as to raise the presumption of death, then it is for them to determine the weight that shall be given such presumption, and to determine whether or not, from all the evidence in the case, the insured was living or dead on the date plaintiff demanded payment of the policy, and concluded: "If the evidence shows by the greater weight or preponderance that he was dead, at the time, your verdict should be for the plaintiff." On behalf of the defendant company the following instruction was requested and refused: "If you believe from the evidence in this case that the absence of James Holck from his family and home in Central City and from Denver, and the fact that he has not been heard from by his relatives and by the plaintiff, since Christmas time 1902, can be ex-

plained on any theory consistent with the evidence of this case, other than that the said Holck was dead at the time this suit was brought, then your verdict must be for the defendant." The defendant also requested the following instruction, which was refused: "The court instructs the jury that if they believe from all the evidence, and the facts and circumstances thereby shown, that the absence of the said James Holck for the period of seven successive years immediately preceding the commencement of this suit, and the fact that the plaintiff has not heard from him throughout that period, are explainable upon any other theory consistent with all the evidence and the facts and circumstances thereby shown, than the theory that James Holck is dead, your verdict must be for the defendant."

Without approving or disapproving the instruction given, it failed to clearly advise the jury and distinctly call their attention to the proposition that if the circumstances of the case were such as to account for the absence of the insured without tidings, without assuming his death, the presumption of death would not attach. That was the vital question, and the law as laid down in one or the other of the instructions requested should have been given, so that the jury would have been required to consider any testimony which would account for the absence and silence of the insured upon any reasonable hypothesis consistent with the evidence, other than that he was dead.

It is contended by counsel for plaintiff that other instructions given cover this point. The court did instruct to the effect that if from all the evidence, the facts and circumstances left the question evenly balanced as to whether or not Holck was dead, their verdict should be for the defendant. The jury were also instructed that the mere fact that Holck was absent for seven years prior to the commencement of the action was not alone sufficient to give rise to the presumption of his death prior to that date. This instruction concluded; "and if you believe from the evidence

that it would be improbable that the said James Holck would communicate with the plaintiff, then the mere fact of such absence for seven years, and his failure to communicate with the plaintiff will not raise the presumption that he was dead at the time of the commencement of this suit." The court also instructed: "If you believe from all the evidence in this case that it is as probable that the said James Holck was living at the time this suit was commenced, as it is that he was not living at that time, your verdict must be for the defendant." Conceding, but not deciding that these instructions do not incorrectly state the law, the language employed did not directly call the attention of the jury to the real question which the defendant requested to have plainly stated. Evenly balanced, means equal in weight or force. Improbable, means unlikely to be true, or to occur; not to be readily believed. Probable is defined as having more evidence for than against, but neither of these words conveyed to the jury the real point for them to consider, namely, that the absence and silence of the insured for seven years, would not raise the presumption of death, if from all of the evidence in the case, his absence and silence could be accounted for without assuming he was dead. That was the test which the jury should have been directed to apply in considering the testimony when the request to so instruct was made, and the failure to do so is reversible error.

Other instructions given by the court were objected to, and errors assigned thereon, which it is not necessary to consider in detail. The rules of law applicable to the case at bar are simple, and on retrial there should be no difficulty in so framing instructions as to properly submit the case to a jury.

At the oral argument it was suggested that the common-law rule under which death is presumed after seven years' absence without tidings, is not in force in this state. This question was not raised at the trial, and nothing is said in the briefs on that subject, and as no authorities are

cited in support of the suggestion, we have not considered it.

The judgment of the District Court is reversed, and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

HILL, J., and SCOTT, J., concur.

*On Petition for Rehearing.*

*Per curiam:* *(en banc).*

In the opinion we said that the evidence referred to in specification 3 of the brief of counsel for the company should not have been admitted. We now rule that the article published in The Weekly Register-Call of date October 15, 1909, as limited by the trial court was admissible, and also rule that plaintiff's exhibit "J J" was properly admitted. Except as thus modified the opinion will stand. The judgment of this court as therein announced is adhered to, and the judgment of the District Court reversed.

*Opinion modified.*

TELLER, J., concurs in the conclusion.

SCOTT, J., dissents.

Decided June 7, A. D. 1915. Rehearing granted. Judgment affirmed on rehearing Oct. 4, A. D. 1915.