EMMA LEMIRE, Appellee, v. NATIONAL LIFE ASSOCIATION,
Appellant.

**DEATH:** **Evidence of Death—Unsupported Presumption.** Seven years of unexplained absence of a person will not, in and of itself, generate a presumption of death. In addition, it must be made to appear: (1) That nothing has been heard of the person during said period by those persons who would be likely to hear; and (2) that diligent inquiry of the party's relatives has proved unavailing. Evidence held insufficient to support a finding of presumptive death.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

DECEMBER 15, 1922.

ACTION by plaintiff against appellant on a policy of insurance on the life of appellee's husband. The right to recover is predicated on the presumption of death by reason of the absence of the insured for seven years. Cause tried to a jury with verdict for plaintiff in the sum of $2,000. From the judgment entered the defendant insurance company appeals.—*Reversed.*

*James P. Hewitt* and *Ole O. Roe*, for appellant.

*Parsons & Mills*, for appellee.

DE GRAFF, J.—This action was instituted February 18, 1921 to recover upon a policy of insurance issued by the defendant to Frank C. Lemire August 1, 1908 for $2,000 payable at his death to his wife Emma Lemire, plaintiff herein. The assessments were paid either by the insured or the beneficiary to November 5, 1920, when "plaintiff ceased to pay such premiums

or assessments in the belief that her husband was dead" as alleged in her petition.

The insured for cause known only to himself left his home at Chicago Heights, Illinois on the 4th day of November 1913. Plaintiff's petition contains the following material allegation: "That no tidings have ever been received by plaintiff or by any member of her family or of his family or by any other person, friend, or acquaintance since the 4th day of November, 1913 as to his whereabouts, and that during the period of seven years which have elapsed since that date the said Frank C. Lemire has not been seen alive or dead by any person so far as plaintiff, after long and diligent effort, has been able to ascertain."

There is no claim nor does the evidence establish the actual death of Frank C. Lemire. Therefore this opinion concerns itself not with the sufficiency of evidence to authorize a finding of the fact of death but with the question whether a presumption of death has arisen under the facts and circumstances of this case.

The inference of death to be derived from unexplained absence is at most only a presumption and the mere failure to hear from an absent person for seven years is not sufficient in itself to raise the presumption.

A presumption is a conclusion reached by means of the weight of proven circumstances, and before it can exist the circumstances which attend and are essential to establish the presumption must be in evidence. The controlling question is: Are the facts and circumstances established by the proofs sufficient to end the presumption of life and start the presumption of death?

The period of seven years was originally fixed in analogy to the limit defined by the English statutes concerning bigamy and leases for lives, but considering the area of our country and the migratory character of its people it may well be said that the presumption has less force here than in the country of its origin especially at the time of its origin. It is a presumption therefore that should require proof of its essential elements and should not be permitted to be too easily or readily established. The burden is upon the plaintiff to establish by a fair preponderance the essentials inhering in the presumption, and it must be

made to affirmatively appear:    (1)    That the person has been absent from his home or usual place of abode for seven years. (2)    That no intelligence has been received concerning him during said period by those persons who would naturally or likely have heard of or from him, if living.    (3)    That the person invoking the presumption has made diligent inquiry from relatives and others likely to know to ascertain the whereabouts of the absentee.    *State v. Henke,* 58 Iowa 457; *Wentworth v. Wentworth,* 71 Me. 72; *Marquet v. Aetna Life Ins. Co.* 128 Tenn. 213 (159 S. W. 733); *Hansen v. Owens,* 132 Ga. 648; *Hitz v. Ahlgren,* 170 Ill. 60; *Hancock v. American Life Ins. Co.* 62 Mo. 26; *Reedy v. Millizen,* 155 Ill. 636.

Is the evidence in the instant case sufficient to raise the presumption that the insured was dead at the time plaintiff commenced her action?    What do the facts disclose?

At the time Lemire left his domicile in Illinois he was 44 years of age and enjoying fairly good health.    For a number of years he had taken part in the local politics in his home town and had been the stationary engineer at the waterworks plant until about six months before he left.    He then engaged in business for himself as a consulting engineer but in this venture he was not successful.    He possessed no property.    His family life seems to have been pleasant.    On the day following his leaving home his wife received a card from him postmarked Chicago, November 4, 7 P. M. 1913, in which he stated, ''Am just leaving for St. Joe, Michigan.    May load machinery if all right and may be few days.''

This card was signed ''Frank.''    It also appears that he called someone in his office and asked him to get word to his wife that he would not be back that night.    He never did return to his home.    Subsequently to his leaving he was seen and positively identified by two former residents of Chicago Heights where he had lived for nearly 20 years.

A few days prior to December 16, 1913 one J. C. Mote of Houston, Texas saw Lemire in Houston and talked with him. Mote had formerly been the mayor of Chicago Heights, had known Lemire for 18 years, and it was during Mote's administration that Lemire was engineer of the waterworks.    We quote the following from the record.    ''Q.    Did you have any diffi-

culty in recognizing him as being Frank C. Lemire at that time? A. Not a particle. Q. Are you able to state to the jury at this time positively that it was Frank C. Lemire that you saw and at that time? A. Yes, sir, absolutely. I walked up to him and extended my hand. He reluctantly gave me his hand. I asked him how long he had been in the city, and he appeared very much disturbed. His remark to me was, 'My name is Arnold.' I said, 'For twenty years previous, it has not been Arnold;' and he kind of sidled off from me,—looked over his shoulder as he sidled away and walked on.'' Upon redirect examination Mote testified: ''Mr. Lemire had a glass eye. I have seen him frequently, and knew of the circumstances of his losing his eye. It was noticeable. When I saw him in Houston, I observed that he had a glass eye.''

Mr. Mote notified Mrs. Lemire of the circumstances within a few days, but after a search in the city of Houston immediately following, Lemire could not be found. Mote did not have knowledge of Lemire's disappearance at the time he met him, but learned that fact from a newspaper the same evening. Later and shortly prior to February 6, 1914 a Mrs. Frank J. Smith met Lemire on two different occasions on the streets of Los Angeles, California. She did not talk with Lemire but was positive in her identification. She also wrote Mrs. Lemire telling her of the circumstances. In that letter after describing him and the clothing that he wore she said: ''He came along with his hands in his pockets, as was always his habit to do as I knew him back home.'' There was a week and a half interval between the two meetings. Both were in the same neighborhood. Concerning the second meeting Mrs. Smith wrote: ''A faint smile of recognition seemed to pass over his face as he looked up and saw me right before him.'' Mrs. Smith at this time knew of his disappearance from home. She also wrote: ''My first impulse was to speak, but wishing to conceal my identity, so that he will not think of leaving at once, I pretended that I had not noticed him.''

Mrs. Smith had lived in Chicago Heights for many years and knew Mr. and Mrs. Lemire quite well. Both Mrs. Smith and Mr. Mote had been away from Chicago Heights a comparatively short time. It further appears that upon an investigation

to locate Lemire in Los Angeles shortly after this time he could not be found. Mrs. Lemire undoubtedly believed that her husband was at that time living and she wrote the defendant company that her husband had been seen in Houston. It is also shown that she secured a decree of divorce in 1917 from her husband on the ground of desertion. About six months after the disappearance of Mr. Lemire from Chicago Heights Mrs. Lemire moved to Minneapolis, Minnesota where she has ever since resided. She has never returned to her former home.

The record also shows that the insured Frank Lemire had a mother, a brother and a sister living whose places of residence were known to the plaintiff herein. No inquiry was ever made by plaintiff as to the whereabouts of her husband through them.

Mrs. Lemire did wire the chief officer of two lodges of which fraternal organizations her husband was a member in an attempt to locate him,—one at St. Joe, Michigan, after the husband left home, and another at Los Angeles after she received Mrs. Smith's letter.

The foregoing are the salient facts in this case, and it constitutes the testimony offered by the plaintiff herself. Ordinarily it is for the jury to say whether the evidence in a case sustains the presumption of death. It is seldom that this court feels constrained to reverse the finding of the jury upon a question of fact, but there are cases in which to do so is a plain duty and this is such a case. The evidence of the plaintiff is of little weight since she left the vicinity of the residence of her absent husband shortly after his disappearance and acquired her residence in a distant state. The evidence fails to disclose that she made any serious effort to locate her husband and that she failed to inquire from his relatives as to their knowledge of him, if any. There is no proof of illness, disease, disposition to suicide or that he had been exposed to any perils. The presumption arises from mere absence and this is not enough. There are no circumstances inconsistent with the presumption of the continuation of life. *Renard v. Bennett,* 76 Kan. 848; *Thomas v. Thomas,* 19 Neb. 81; *Seeds v. Grand Lodge,* 93 Iowa 175.

Furthermore the presumption is not conclusive, but rebuttable. In this case we have the testimony of two uncontradicted, unimpeached, and disinterested witnesses that the insured was

seen in life within the seven year period. There is no evidence in this case except the beneficiary that tends to establish the essential elements upon which to predicate the presumption of death. She removed from the last known domicile of the absentee shortly after his disappearance and never returned. She made no inquiry from those persons likely to know of his whereabouts, if living. There must be evidence of diligent inquiry at his last place of residence and among his relatives and of any other persons who would probably have heard from him were he living. The rule does not confine the intelligence to any particular class of persons, as it is not a question of pedigree. *Flynn v. Coffee,* 94 Mass. (12 Allen) 133.

The essentials to establish the presumption are wanting in the proof, and upon the whole record the motion of defendant for a directed verdict should have been sustained. In the event of a retrial of this cause, or of a new action instituted, the decision of this court shall not be construed as an adjudication. Wherefore the judgment entered by the trial court is—*Reversed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.