ANNA M. AXEN, Appellee, v. MISSOURI STATE LIFE INSURANCE
COMPANY, Appellant.

DEATH:    Presumption—Fugitive from Justice.    Continued and unex-
plained absence of an insured for seven years, notwithstanding efforts
of relatives to locate him, creates a jury question on the issue of
death, even though the original disappearance was at a time *when the
insured was a defaulter to a large amount.*

Headnote 1:  17 C. J. pp. 1173, 1176.

Headnote 1:  8 R. C. L. 714.

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

APRIL 5, 1927.

Action by beneficiary to recover on a policy of insurance.
The defense pleaded was that the assured was not dead at the
time of the commencement of the action.   Defendant's motion
for a directed verdict was overruled, the jury returned a verdict
for the plaintiff, and the defendant appeals.—*Affirmed.*

*Dutcher & McClain,* for appellant.

*Byington & Rate,* for appellee.

FAVILLE, J.—I.   There is no conflict in the evidence in this
case.   On the 18th day of January, 1913, the Hartford Life In-
surance Company issued its policy of insurance upon the life of
John J. Axen.   Said policy was payable to the appellee.   Lia-
bility under this policy was assumed by the appellant shortly
after the policy was issued.   The insured was cashier of the Galt
Savings Bank, of Galt, Iowa, at the time of the issuance of the
policy, and continued so until September 17, 1917, when he dis-
appeared.   At that time, the insured was 32 years of age, had
been married to the appellee for a period of seven years, and at
said time had an infant daughter, about six years of age.   The
record shows that his domestic relations were pleasant, and that
he was attached to his home and his wife and child.   On the
evening of September 17, 1917, while at the supper table, the

insured told his wife that he was going to attend a meeting of the Knights Templar at Eagle Grove that evening. He left about seven o'clock, stating that he was going to drive his car to Clarion, and go from there to Eagle Grove. Instead of going in the direction of Eagle Grove, however, he drove his car to Iowa Falls, in a different direction, and registered the same in a garage there, under the name of J. J. Anderson. He did not attend the Knights Templar meeting at Eagle Grove. He was a man in apparent good health, big and strong, and had an expectancy of 33 years. The record shows that, at the time of his disappearance, the insured, as cashier of the bank, had misappropriated funds of the bank to an amount in excess of $30,000. None of his family or immediate relatives or friends have heard anything from him since the date of his disappearance. Immediately after the disappearance of the insured, the appellee telegraphed to the insured's father and brother, who came at once to Galt, and made a search for the insured in that vicinity, and telephoned to surrounding towns. The car was located at Iowa Falls, but nothing was discovered of the whereabouts of the insured. It appears that, on one occasion, relatives of the insured saw a picture of a naval officer in a Des Moines paper, which they thought resembled the insured, and their attorney forwarded this to Washington for information from the intelligence office, but received no information that the picture was that of the insured. Aside from the foregoing, there is practically no evidence of any attempt on the part of the appellee or other relatives of the insured to locate him. The insured was a member of certain fraternal orders, but it appears that no inquiries were made through the lodges of these orders, to find the insured. No advertisements were placed in any newspapers or elsewhere, with regard to locating the insured, and neither the appellee nor any members of the family of the insured incurred any expense in endeavoring to locate him.

The main proposition relied upon by the appellant is that the court should have sustained the appellant's motion for a directed verdict, and erred in submitting the case to the jury. The burden of proof in this case rested upon the appellee. There could be no recovery under the policy of insurance without proof of the death of the insured. The appellee attempted to prove death by the fact of the disappearance of the insured and

his absence without communication with relatives and friends for a period of more than seven years. The appellee relies upon the presumption which the law raises in regard to the death of a person who has disappeared and not been heard of for a period of seven years. The common law raises this presumption of death in a proper case and on a proper showing. It is, however, a rebuttable presumption. The question has arisen in very many cases, and the rule is not always clearly stated as to when the presumption of death from disappearance will arise.

In 4 Wigmore on Evidence (1905 Ed.), Section 2531, it is said:

"But there is a genuine presumption, of long standing and of universal acceptance, to aid proof of death. It is generally said to arise from the fact of the person's continuous absence from home, for seven years, unheard of by the persons who would naturally have received news from the absentee. The phrasings differ, however; * * * the practice is not uniform in defining the precise point, or combination of facts, at which the burden of producing evidence shifts to the opponent."

There is no doubt of the existence of the general rule. The question in the instant case is whether, upon the record, such presumption did arise, and if so, whether it was so overcome or rebutted that the court should have directed a verdict, as a matter of law. We first considered this question in *Tisdale v. Connecticut Mut. Life Ins. Co.*, 26 Iowa 170, where the action was on a policy of insurance. We therein recognized "the familiar rule of evidence that, when a person has not been heard of for many years, the presumption of duration of life ceases at the end of seven years * * *." In that case we held that the facts and circumstances might be such that death could be inferred, "whatever has been the duration of such absence," although less than seven years.

In *State v. Henke*, 58 Iowa 457, we said:

"A presumption of the death of a party does not arise until he has been absent, without intelligence concerning him, for the period of seven years."

In *Seeds v. Grand Lodge of A. O. U. W.*, 93 Iowa 175, an action was brought upon a certificate of insurance. A motion for a directed verdict in behalf of the defendant was sustained, and affirmed upon appeal. In said case we said:

"The rule that death may be presumed from seven years' *unexplained absence* does not exclude evidence of other facts and circumstances which fairly tend to establish the probability of death within an earlier period."

This is the first time that the words "unexplained absence" in connection with the rule appeared in our decisions, and, as stated, it was used merely in connection with the rule that permits other facts and circumstances to establish the probability of death within the seven-year period.

In *Sherod v. Ewell,* 104 Iowa 253, we quoted with approval the general rule that the presumption of death of a party does not arise until he has been absent without intelligence concerning him for the period of seven years. No reference was made to "unexplained absence."

The same is true of *Oziah v. Howard,* 149 Iowa 199, and *Carpenter v. Modern Woodmen,* 160 Iowa 602.

In *Magness v. Modern Woodmen,* 146 Iowa 1, the rule is thus stated:

"The presumption of death from long absence is, of course, not conclusive; but, when it is shown to have continued for seven years or more, unaccompanied by circumstances which reasonably account for his disappearance on a theory not involving his death, it becomes sufficiently strong to cast the burden of rebutting it upon the party asserting the continuance of life. 3 Elliott's Evidence, Section 2010; 1 Greenleaf Evidence, Section 41; *Cowan v. Lindsay,* 30 Wis. 589."

In *Richey v. Sovereign Camp of W. O. W.,* 184 Iowa 10, we said:

"A presumption of death does arise from the continued and unexplained absence of a person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him; and in such case the presumption is that the absentee died sometime during the first seven years of his unexplained absence."

In *Haines v. Modern Woodmen,* 189 Iowa 651, we said:

"It is first argued for the appellant that the presumption of death from disappearance and continued absence of seven years does not arise unless it be further shown that the missing person has been diligently sought and inquired after without avail, and

that there is in this case a failure of such proof. There is considerable variance in the views of the courts upon this feature of the rule. By some, the idea expressed by appellant's counsel is approved, and the party relying upon the presumption must show a high degree of diligence in making inquiry and search. By others, it is distinctly held that proof of disappearance and continued unexplained absence for seven years, without being heard from by those with whom, in the natural course of things, the person would be likely to communicate, is all that is necessary, and that the presumption is not rebutted or overcome by a failure to show specific acts of search or inquiry. *Miller v. Sovereign Camp W. O. W.*, 140 Wis. 505 (122 N. W. 1126) ; *Page v. Modern Woodmen*, 162 Wis. 259 (156 N. W. 137). In none of our cases have we gone to either extreme. We have said that: 'When the absence is shown to have continued for seven years or more, unaccompanied by circumstances which reasonably account for his disappearance on a theory not involving his death, it becomes sufficiently strong to cast the burden of rebutting it upon the party asserting a continuance of life. * * * Slight evidence may sometimes be sufficient to rebut the presumption of death; but ordinarily it is a question for the triers of fact to determine whether the presumption shall prevail. In short, the circumstances both for and against the theory of death are to be taken into consideration, and therefrom the truth arrived at as nearly as may be possible, under the established rules of law governing the adjudication of disputed facts.' *Magness v. Modern Woodmen*, 146 Iowa 1, 5. Such is also the effect of our recent decision in *Richey v. Sovereign Camp W. of W.*, 184 Iowa 10. And see *Kennedy v. Modern Woodmen*, 243 Ill. 560 (90 N. E. 1084). The strength of the presumption so arising may, of course, be augmented or weakened by the evidence or lack of evidence on the subject of search or inquiry made for the missing person; but, when the disappearance is shown to have continued for seven years or more, without communication with his family and friends, and without any showing of circumstances which would naturally lead him to conceal his location from those to whom he is bound by ties of blood, affection, and friendship, it presents at least a question of fact, on which the finding of the jury, or of the court sitting in place of the jury, cannot be set aside on appeal, as being without support. The

undisputed record sufficiently sustains the plaintiff's case in this respect."

In *Lemire v. National Life Assn.*, 194 Iowa 1245, we said:

"The burden is upon the plaintiff to establish by a fair preponderance the essentials inhering in the presumption, and it must be made to affirmatively appear: (1) That the person has been absent from his home or usual place of abode for seven years. (2) That no intelligence has been received concerning him during said period by those persons who would naturally or likely have heard of or from him, if living. (3) That the person invoking the presumption has made diligent inquiry from relatives and others likely to know, to ascertain the whereabouts of the absentee."

While the rule as announced in our decisions varies somewhat in the form of expression in the different cases, we think it is fairly deducible therefrom that we have recognized and announced the rule that the presumption of death by absence for a period of seven years arises only in those cases where it affirmatively appears that the person in question has been absent for a period of seven years, and that reasonable inquiries have been made by those interested, to ascertain his whereabouts, and that no information has been received by those who would naturally hear from him during said period, in response to such inquiries, and that the disappearance and continued absence are unexplained. It is not sufficient in such cases to merely establish the fact of the absence for the period of seven years. The presumption of death does not arise from this circumstance alone.

It is quite universally held that it must also appear that the party has not been heard from during the seven-year period by immediate relatives or friends,—in other words, those most likely to have received communications from him. As said in *Haines v. Modern Woodmen*, supra:

"The strength of the presumption so arising may, of course, be augmented or weakened by the evidence or lack of evidence on the subject of search or inquiry made for the missing person."

This usually is a question for the jury, and we think it was such in this case.

II. We think it is also well established by our decisions and by the courts generally that the absence must be "unexplained" before the presumption of death will arise.

In *Northwestern Mut. Life Ins. Co: v. Stevens,* 18 C. C. A. 107 (71 Fed. 258), the circuit court of appeals of this circuit, speaking by Mr. Justice Sanborn, said:

"It is a general rule that a state of facts once shown to exist is presumed to continue until a change, or facts and circumstances inconsistent with its continued existence, are proved. A living man is presumed to continue to live until the contrary is shown, or is presumed from the nature of the case. All the authorities concur in the general proposition that the presumption of life continues seven years after the unexplained disappearance of a man, under ordinary circumstances, from whom no tidings return to his friends or acquaintances, and that then the presumption of life ceases and the presumption of death arises. These presumptions, however, are but rational inferences from the given state of facts, which so many courts have agreed that reasonable men, in the exercise of sound judgment, would naturally draw, that they have become rules of action and of decision. They are, after all, only presumptions of fact; and, when the state of facts from which they are drawn is modified, the presumptions or inferences drawn from it must and ought to change. It is conceded that, when one who is last seen in a state of imminent peril that might probably result in his death is never again heard from, though diligent search for him is made, the inference of immediate death may justly be drawn. It goes without saying that, if a guilty man, who has been indicted for a heinous crime, flees, in the full vigor of health, from impending disgrace and just punishment, and his friends and acquaintances hear from him no more, the inference of continued life after the expiration of seven years might well be drawn, and no presumption could arise from that state of facts that his life had ceased within that period. The various facts of numberless cases will range them between the extreme cases we have supposed. Two cases of disappearance in which the facts are exactly alike will probably never arise, and the strength of the presumption of life or death will never be the same in any two cases. The facts and circumstances surrounding each disappearance which tend to affect the inference of continued life or early death that the minds of reasonable men, anxious only to arrive at the truth, would draw, should be received in evidence in the trial of these cases; and then, guided by the established presumption that one

who disappears under ordinary circumstances is presumed to live for seven years thereafter, the fact of continued life or previous death at the important date should be determined by the jury, if there is sufficient evidence in the case to warrant a finding that the established presumption has been varied, and by the court if there is no such evidence."

At this point, we have the question: Does the fact that the insured was shown by the evidence to have been a defaulter, and to have been a fugitive from justice, so "explain" his disappearance and continued absence that the court must hold, as a matter of law, that the presumption of death does not arise; or was it a question for the jury to determine whether or not his absence was "unexplained?" The cases are in conflict on this question.

In *Goodier v. Mutual Life Ins. Co.*, 158 Minn. 1 (196 N. W. 662), the Supreme Court of Minnesota considered a case where the insured was a lawyer, happily married, and the father of three children. He was in good professional standing. It appeared from the evidence that he had abused the confidence of his clients in financial matters. The court said:

"In the instant case, the absconder was not only sure of prosecution; he was sure of conviction and resulting precipitation from his former estate of a leading citizen in the community to a depth of degradation not reached by the ordinary criminal."

The court also said:

"Ordinarily, whether an insured is alive or dead is a question for the jury; but a verdict should be directed against the litigant having the burden of proof where there is no more evidence of death, at the time or within the period necessary to sustain a recovery, than there is here. To adopt any other view would remove cases of this kind from the control of law, and permit their decision by wholly uncontrolled and always differing notions of facts."

In *Davie v. Briggs*, 97 U. S. 628 (24 L. Ed. 1086), it is said:

"The general rule undoubtedly is that 'a person shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death.'"

In *New York Life Ins. Co. v. Holck*, 59 Colo. 416 (151 Pac. 916.), the Supreme Court of Colorado said:

"* * * if the circumstances of the case were such as to account for the absence of the insured without tidings, without assuming his death, the presumption of death would not attach. That was the vital question, and the law as laid down in one or the other of the instructions requested should have been given, so that the jury would have been required to consider any testimony which would account for the absence and silence of the insured upon any reasonable hypothesis consistent with the evidence, other than that he was dead."

In *Thetford v. Modern Woodmen* (Tex. Civ. App.), 273 S. W. 666, the insured was 21 years of age, unmarried, and in good health. He had just been released from jail, under indictments charging felonies. The court said:

"There were the strongest reasons for his continued absence and for concealing his whereabouts and his identity. If circumstantial evidence alone is ever competent to show that the absent person is alive during the 7-year period, the facts in evidence present such case."

In *Equitable Life Assur. Soc. v. James*, 73 Ind. App. 186 (127 N. E. 11), the court said:

"The fact that the insured, at the time of his disappearance, was guilty of the crime of forgery, and may have been a fugitive from justice, was properly admitted in evidence to rebut the presumption of death arising after seven years' absence; but the proof of such fact did not, as a matter of law, overcome the presumption of death."

In *Mutual Ben. Life Ins. Co. v. Martin*, 108 Ky. 11 (55 S. W. 694), the case arose under a statute providing, in effect, that a person who had been absent from the state for seven consecutive years would be presumed to be dead, "unless proof be made that he was alive within that time." The insured had been treasurer of the state, and had embezzled large sums of money, and had been indicted. The proof showed the absence for seven years, unheard of. The court said:

"When the plaintiff shows that a resident of the state has been absent seven successive years from the time he left, or from the time he was last heard from, the burden of proof shifts to the defendant to overcome the presumption of his death. This proof

may be direct, or it may be circumstantial, arising from the circumstances under which the person left, his reasons for leaving, or concealing his whereabouts, his age, condition of health, his motives for not returning or keeping in communication with his home, and the like. In this case, it was a question for the jury, on all the evidence, whether the assured, J. W. Tate, was alive or dead when the action was brought.''

In *Winter v. Supreme Lodge K. of P.*, 96 Mo. App. 1 (69 S. W. 662), it appeared that the insured was a defaulter. The court held that as to whether the long absence showed a fair inference that the absentee was alive, or showed a conflicting inference, was for the jury to determine.

The foregoing cases illustrate the divergent views of the courts upon the question.

In the instant case, the court submitted the question to the jury under instructions as to which appellant makes no complaint.

We think it was a proper question for the jury to determine whether reasonable diligence has been shown, to locate the insured, and also whether his absence for seven years was so explained as to warrant the presumption of his death. We do not think that, upon the entire record, we can say, as a matter of law, that the presumption of death could not be indulged. All the facts and circumstances were before the jury, and it was for them to determine whether or not the circumstances under which the insured absented himself prevented the presumption of death from arising, or overcame such presumption. The fact that a contrary verdict under a given state of facts would seem more consistent does not, of itself, justify this court in setting aside the verdict. This is especially true where, as in this case, under the peculiar facts, the conclusions rest on inference and presumptions to be drawn from the evidence.

We think the court did not err in denying the appellant's motion for a directed verdict.

The judgment is—*Affirmed.*

STEVENS, VERMILION, ALBERT, and MORLING, JJ., concur.

EVANS, C. J., and DE GRAFF, J., dissent.