The plaintiff seeks to recover the amount of an insurance policy issued by the defendant upon the life of the plaintiff's son, R. Claude Albert. The policy was issued June 1, 1927. Since September 2, 1932, the insured has been absent and unheard from, and the plaintiff claims to have established a basis for a presumption of the death of the insured, arising from seven years' unexplained absence.
The following are the facts established. The insured was 23 years old and in good health. His schooling extended through two years of high school. He owed no bills and had no financial difficulties. He lived with his parents and seven brothers and sisters at the home of his parents in Stamford, got along well with them, and showed particular affection toward his mother. Beginning with 1927, when the family came to live in Stamford, the insured worked for four different employers, his last employer being the Huber Ice Cream Co., for whom he operated a delivery truck during the spring and summer of 1931 and 1932. Out of his earnings he purchased 120 shares of Cities Service stock, paying for the same in installments.
His employment with the Huber Company was not for the year round and he gave up his job during the latter part of August, 1932, in order to seek permanent employment. On Monday, August 29, 1932, after having lunch at home, he told his mother he was going to New York to try to get work with the Reid Ice Cream Co., an affiliate of the Huber Company. He took neither extra clothing nor travelling luggage and said he would be gone two or three days. Apparently he took with him his certificates of Cities Service stock, for it appears that on August 29, 1932, the same day he left home, he visited the office of a broker in Cities Service stock at 60 Wall Street, New York, and made arrangements to sell 50 shares and to transfer the remaining 70 shares to his parents. He registered at the Times Square Hotel, and the following day, August 30th, a check for $246 was mailed to him at the hotel by the broker. The cancelled check shows that it was paid by the bank on which it was drawn on September 2nd, and bears the indorsement of the Reid Ice Cream Company, indicating that either on August 30th, 31st *Page 35 
or September 1st, the insured had visited the Reid Ice Cream Company and had indorsed and delivered the check to it. On September 1st, he wrote his parents from the Times Square Hotel that he had an opportunity to go to Brazil on a coffee boat with a friend, George Chapman, and that he was leaving the following morning and would be gone for about four months. Nothing more has been heard from or concerning him.
The insured had never been away from home and there is nothing to indicate that his home life was other than a pleasant and normal one. There is no evidence that his companions were other than of good moral character. That his relations with his employer were satisfactory is attested to by the fact that in April, 1933, his employer, being unaware of his absence, called for him to return to work. There is no suggestion of any reason why he should voluntarily wish to absent himself and cut off all relationship with his parents and brothers and sisters.
A presumption of death may arise from an unexplained absence of seven years, but mere absence alone is not enough to raise the presumption, and unless diligent efforts have been made to find the absent one his absence cannot be held to be "unexplained." Potter vs. Prudential Insurance Co., 108 Conn. 271,277.
The question then is whether the efforts exerted by the plaintiff have been sufficient to warrant a finding that the absence of the insured is unexplained, within the rule, and that death is the probable reason why nothing has been learned concerning him since his disappearance in 1932.
In his letter to his parents telling of his intended departure for Brazil, the insured had stated that he would write upon his arrival; and when nothing had been heard from him by January, 1933, his mother began to worry and wrote to the Times Square Hotel in an effort to obtain some information concerning him. She received a reply to the effect that he had checked out of the hotel on September 2, 1932.
At about the same time the plaintiff visited the Stamford detective bureau and requested that a search be instituted. Thereafter on three or four occasions, the plaintiff called on the Stamford police but could get no information of value. *Page 36 
Later, the plaintiff, with his wife, went to Mamaroneck, New York, and made a search in an effort to obtain information concerning George Chapman. They called on a Mr. and Mrs. Ryle, with whom Chapman had lived. With them. they visited the police and made a tour of boarding houses and of establishments where ice cream was sold, but without result.
The aid of the Federal Bureau of Investigation in Washington was enlisted, and a photograph of the insured, with the facts attending his disappearance, were sent to the bureau, and advertised, but produced no information.
On September 8, 1937, the plaintiff filed with the defendant, on a blank furnished by the defendant, a Declaration of Disappearance, in which he set forth all of the information he had and a recital of the efforts theretofore made to find the insured. A 1931 photograph of the insured was annexed to the declaration.
Inquiries were made by the plaintiff to ascertain whether the insured had enlisted in the Army or the Navy. Communications were also sent to various relatives; including an aunt residing in Florida.
From this recital it is apparent that the efforts of the plaintiff to find his son have been reasonably extensive. His search and inquiries have been directed to all avenues which seemed at all likely to yield information, and under the circumstances may properly be described as having been diligent.
The defendant objects that the plaintiff's search was not as extensive as it should have been. It is urged that search should have been made in Brazil, that ship sailings to that country in September, 1932, should have been investigated, and that other possible sources of information should have been explored.
The evidence discloses that the defendant made an investigation of its own after it acquired notice of the insured's disappearance. Nothing has been presented to indicate that had the plaintiff resorted to means other than those he employed, the results might have been more fruitful. In this connection it may be pertinent to note the comment of the court inModern Woodmen of America vs. Michelin, 101 Okla. 217,225 P. 163, wherein a young man of 25 years disappeared, *Page 37 
and the insurer complained of the inadequacy of the search. The court, on page 222, of volume 101 Okla., had the following to say: "With knowledge of all facts which the mother had and knowing this suit was to be filed, the company refused to make search.... Perhaps the jury believed the company's reason for not extending the search was good and believed it was equally good for the mother's failure so to do. She might have written a letter to Juarez, in the Republic of Mexico, from whence her son's postal card came, and so the company might have done.... It is true that the company is under no legal obligation to make any inquiry or search for this son and the sole duty in that respect was upon the mother. Being equally interested in the discovery of the son and knowing all the facts, the company's failure to do any of these three additional things which they suggested the mother should have done, at least tends to detract from the appearance of good faith on the part of the company in complaining that the mother did not do so."
In Potter vs. Prudential Insurance Co., supra, a finding that the search had been adequate was approved although the search appears to have been much less extensive than that here disclosed. In other jurisdictions the courts appear to take the view that if the search is such as it would be reasonable to expect under the circumstances, it is sufficient. Sackett vs.Metropolitan Life Ins. Co., 260 Mich. 466, 245 N.W. 499;Fredrikson vs. Massachusetts Mutual Life Ins. Co., 126 Neb. 240,252 N.W. 802; Axen vs. Missouri State Life Ins. Co.,203 Iowa 555, 213 N.W. 247.
It is concluded that the evidence produced justifies the inference that death is the probable reason why nothing has been heard of the insured since his disappearance.
 Judgment may enter for the plaintiff to recover $1,000 damages, with interest from September 2, 1939, amounting to $103.33, or a total of $1,103.33, and costs.